[No. 18368.    In Bank.—April 1, 1896.]

## STOCKTON SAVINGS AND LOAN SOCIETY, RESPONDENT, v. R. B. PURVIS, SHERIFF OF STANISLAUS COUNTY, APPELLANT.

LANDLORD AND TENANT—ORAL LEASE — CASH · RENT—RESERVATION OF TITLE TO CROP—CONSTRUCTION OF CONTRACT—SECRET LIEN—ATTACHMENT.—An oral lease of land for a fixed annual cash rental, with an understanding that the title to the crop was to remain in the landlord during the term, and that the crop was to be hauled to the nearest warehouse and stored in the name of the landlord, who was to receive the cash rental from the sale thereof, and render the overplus, if any, to the tenant, is to be construed, as a whole, as intended to give security to the landlord for payment of the cash rental, and to create a secret lien upon the growing crop, as such security, without complying with the chattel mortgage law; and the oral provision for title in the landlord must fail, in· view of the intention of· the parties for security, as evidenced by the whole contract; nor can the secret lien stand as against an attachment levied on the growing crop as the property of the tenant by his creditor.

ID.—TERMS OF CONTRACT NOT CONCLUSIVE.—No clause in a contract in terms locating the title to the property forming the subject matter of the contract in one of the parties is controlling upon a court, as against the provisions of the contract, taken as a whole, locating the title in the other party; nor is there anything in the name given to a contract, which can bind or control the court; but the true construction of the contract is to be determined by the legal effect of it considered as a whole, in view of the ruling intention of the parties, gathered from all the language used.

APPEAL from a judgment of the Superior Court of Stanislaus County.    WILLIAM O. MINOR, Judge.

The facts are stated in the opinion of the court.

*H. G. W. Dinkelspiel*, and *Stonesifer & Needham*, for Appellant.

A landlord cannot acquire a lien for rent, reserved in the lease, or the value of the use and occupation of the land, to the exclusion of creditors of the tenant.    (Civ. Code, sec. 2888; *Hitchcock* v. *Hasset*, 71 Cal. 331; *Farnum* v. *Hefner*, 79 Cal. 582; 12 Am. St. Rep. 174.)    No lien attached, if any attached at all, or was to attach, until the grain was stored in the nearest warehouse. (Civ. Code, sec. 2986; *Hathaway* v. *Brayman*, 42 N. Y.

325; 1 Am. Rep. 524; *Hull* v. *Carnley,* 11 N. Y. 501; *Hall* v. *Samson,* 19 How. Pr. 483; 23 How. Pr. 84; *Goulett* v. *Asseler,* 22 N. Y. 230; *Cardinell* v. *Bennett,* 52 Cal. 476.) The lease was an attempt to create a crop mortgage, but, being oral, and not conforming to the provisions of the code relating to chattel mortgages, is void as against attaching creditors. (Civ. Code, secs. 2924, 2955–57, 2959, 2978; *Butterfield* v. *Baker,* 5 Pick. 522; *Johnson* v. *Crofoot,* 53 Barb. 574; *Jones* v. *Chamberlin,* 5 Heisk. 210; Jones on Mortgages, sec. 479; *Palmer* v. *Howard,* 72 Cal. 295; 1 Am. St. Rep. 60; *Palmer* v. *Marysville etc. Pub. Co.,* 90 Cal. 168.) In the notice to the sheriff, plaintiff claims title to the property by virtue of a lien for rent only.

*Nicol & Orr,* for Respondent.

All the property produced upon the lands leased, by express contract, remained the property of the landlord. The only interest Dallas ever had in the crops was contingent upon their realizing, upon sale, more than two thousand one hundred and forty dollars. (*Howell* v. *Foster,* 65 Cal. 173; *Wentworth* v. *Miller,* 53 Cal. 9; *Sunol* v. *Molloy,* 63 Cal. 370; *Blum* v. *McHugh,* 92 Cal. 497.) An attaching creditor takes only whatever interest the debtor had. (Code Civ. Proc., sec. 709; *Hoag* v. *Howard,* 55 Cal. 564; *Bank of Ukiah* v. *Petaluma Sav. Bank,* 100 Cal. 590.)

GAROUTTE, J.—Plaintiff, as the owner of a certain tract of land, entered into a contract with one Dallas, whereby it let the said land to Dallas for the term of one year, upon the oral understanding and agreement that Dallas should, during said year, farm the same at an annual cash rental of two thousand one hundred and forty dollars; and it was understood and agreed between the parties that the title to said crops raised thereon during said term was to remain in said plaintiff, it being further understood and agreed that the said crop was to be hauled to the nearest warehouse and stored

in the name of plaintiff, and that from the sale of said crops plaintiff was to receive as rent aforesaid the sum of two thousand one hundred and forty dollars cash, and the overplus, if any, was to go to and be the property of said Dallas, and that no part of such crop should be in any way subject to the disposal of said Dallas. Under the aforesaid contract, Dallas entered into the possession of the land, and planted a crop of wheat thereon. While said wheat was growing, and prior to the harvesting thereof, Eppinger & Co., a creditor, attached the growing crop as the property of Dallas; and this action is brought by the plaintiff, the lessor, against the attaching officer, the sheriff, for the conversion of the property, plaintiff claiming, under the aforesaid contract, to be the owner of the entire crop.

The legal soundness of plaintiff's claims is wholly dependent upon the true construction of this contract of lease, and the general rules of law for the interpretation of contracts are applicable here. The fact that it is a contract between a lessor and a lessee of land, for the farming thereof, in no wise proves it an exception to the application of the general rules of interpretation; and the first and controlling rule for such interpretation is, What was the intention of the parties at the time of the making of the contract? Another rule of interpretation, equally controlling and binding, is that such intention must be gathered from the contract taken as a whole, considering all its provisions together, and not from any one clause considered as standing alone. Plaintiff insists that the title to this growing crop was in it, and points to the clause of the contract to support its contention which provides: "It is understood and agreed between plaintiff herein and said Robert Dallas that the title to said crops raised thereon during such term is to remain in said plaintiff." Testing this contract by this clause alone, plaintiff's position is impregnable. Closing our eyes to all other provisions, we would be bound to hold the title to be in plaintiff. But this court is not authorized by the rules of law to measure the intentions of

these contracting parties in any such manner. No clause in a contract in terms locating the title to the property forming the subject matter of the contract in one of the parties is controlling upon a court, as against the provisions of the contract, taken as a whole, locating the title in the other party. There is nothing in the name given an instrument which will be in any way binding or controlling upon the court. Calling a contract a lease or a sale will not make it a lease or a sale. The agreement, whatever it may be, when coming before a court, will be named according to its provisions, and any technical christening of it by the parties cannot control its true interpretation. As was said in *Park etc. Co.* v. *White River etc. Co.*, 101 Cal. 39, referring to a certain written instrument: "This paper was not a lease. Calling it a lease did not establish the fact. This is peculiarly a case where there is nothing in a name, for the contents of the paper determine its true character." Again in *Heryford* v. *Davis*, 102 U. S. 235, in speaking as to the true construction of a contract, the court said: "The answer to this question is not to be found in any name which the parties may have given to the instrument, not alone in any particular provision it contains, disconnected from all others, but in the ruling intention of the parties, gathered from all the language they have used. It is the legal effect of the whole which is to be sought for. The form of the instrument is of little account." In *Putman* v. *Wise*, 1 Hill, 246, 37 Am. Dec. 309, the court quotes from Woodfall's Landlord and Tenant, where the author says: "*The most proper and authentic form of words* may be overcome by a contrary intent appearing in the deed of demise."

Keeping the foregoing principles in view, let us weigh and measure this contract by considering all its parts together. Plaintiff leased this land for a cash rent of two thousand one hundred and forty dollars. There was an express promise to pay this amount of money, and its payment was in no way dependent upon the

raising of any crop. There was an independent personal liability. The crops may have proved a total failure, and still the money called for by the contract was a present, binding liability. There is not even a provision in the contract that the title to the crops should return to the lessee upon the payment of the rent money. Under plaintiff's contention this money may have been paid within a few days after the execution of the lease, and still the crops would have remained the lessor's property. According to plaintiff's construction of the contract, it owned both the money demand for the rent and the growing crop. It could have sold the demand for full value, and, at the same time, have mortgaged the crop, or even sold it, giving perfect title to both demand and crop. Plaintiff may have transferred or collected its claim, and still the crop of growing grain might have been sold under an attachment and execution issued at the hands of its creditors. All these things could have happened if plaintiff's contention be true. We think that such was not. the intention of the parties, certainly not the intention of the lessee. Where a person pays cash rent for the exclusive use of a tract of farming land, with the intention and for the express purpose of raising crops of grain thereon, it would seem that such crops would belong to the lessee. Certainly, that should be the construction of the contract, unless reasons for a different construction stand out in bold relief upon its face, and they do not present themselves here.

It further appears that the grain was to be hauled to a certain warehouse when harvested, and thereupon sold by plaintiff, and the proceeds applied, first, to the payment of its cash rent of two thousand one hundred and forty dollars, and the balance, if any, to go to the lessee. It would be a peculiar construction of this contract, and even an absurd one, to hold that plaintiff was to sell his own crop of grain, and apply the proceeds, to the payment of a claim owned and held by it against its lessee. This clause of the contract plainly indicates an attempt

by the lessor to hold the crop, when harvested, as se-curity for the rent. Taking the whole contract together, it clearly indicates the purpose of these parties was to create a lien upon the growing crop to secure the pay-ment of the cash rent; and any direct statement in the contract itself that such was not the purpose, or that the title to the crop was to remain in the lessor, must go down as against the plain intention of the parties, as evidenced by the entire contract when held before us by its four corners for consideration.

In the examination of the question here presented we are not at all loath to arrive at the conclusion reached. Under the law of this state there is no reason why a transaction of the character here presented should ever have been entered into. It was secret in every respect. It was not even in writing. As indicated by the amount of rent to be paid, the lessee was farm-ing a large tract of plaintiff's land. It undoubtedly ap-peared to the public that he had an interest, at least, in the crops which he was cultivating. Under this con-tract of lease, as plaintiff asks to have it construed, the dealer who furnished the sacks to sack the grain, and the man who furnished the labor and machinery to har-vest it, could not attach it for the labor and materials furnished. The public should not be dealt with in this way, and the law is not favorable to any such secret transactions. Again, there was no honest excuse for it, for the plaintiff could well have taken a chattel mort-gage upon the growing crop to secure his rent, and thus the world would have had notice of the financial stand-ing of the lessee, and could have dealt with him in the light of day with open eyes.

By reason of the opportunities for fraud presented by this character of contract courts are inclined to scru-tinize them closely, and, as we have stated, will not be concluded from such scrutiny by any name given the instrument, or by any single provision contained therein. It is the legal effect of the contract as an entirety that points our judgment. The language of this court in

*Palmer* v. *Howard*, 72 Cal. 293, 1 Am. St. Rep. 60, is full of meaning, and sheds a flood of light upon this question of construction. It is there said: "But, in applying this rule, it must be remembered in general that the policy of the law is against upholding secret liens and charges to the injury of innocent purchasers or encumbrancers for value, and, in particular, that mortgages of personal property are permitted only in certain specified cases, and then only upon the observance of certain formalities, designed to secure good faith and to give notice to the world of the character of the transaction. These provisions as to mortgages cannot be evaded by any mere shuffling of words. When it is clear from the whole transaction that for all practical purposes the ownership of property was intended to be transferred, and that the seller only intended to reserve a security for the price, any characterization of the transaction by the parties, or any denial of its legal effect, will not be regarded. The question, it is true, is one of intention; but the intention must be collected from the whole transaction, and not from any particular feature of it." (See, also, *Walls* v. *Preston*, 25 Cal. 63.) For the foregoing reasons we conclude this contract was an attempt to obtain the advantages of a chattel mortgage without complying with the provisions of the statute upon that subject.

As a condition precedent to the beginning of this action, plaintiff made a demand upon the attaching officer for the return of the property attached. It is now claimed by defendant that the demand was materially defective; but, without passing upon that question, we are able to say the written demand is pregnant with meaning, as showing the interest claimed by plaintiff in this grain. In that demand it is clearly shown what plaintiff considered the *status* of this property to be, and also the construction put upon this contract by it. In its demand upon the sheriff, plaintiff did not even claim to be the owner of the property, but simply asserted a lien thereon. The demand asserts that said crops "were,

and are now, subject to the lien of the Stockton Savings and Loan Society for rent reserved, to the amount of two thousand one hundred and forty dollars." Above every one else, the plaintiff should know what its own intentions were in entering into this contract.

There are some cases which would seem to be opposed to the views here expressed, notably *Smith* v. *Atkins*, 18 Vt. 461, *Edson* v. *Colburn*, 28 Vt. 631, 67 Am. Dec. 730, and *Andrew* v. *Newcomb*, 32 N. Y. 417. With those cases we will not here deal. Possibly, to a large degree, those decisions were made from necessity, by reason of the absence of any chattel mortgage act, but we pass them by, and come to a consideration of the cases found in our own reports upon this question. The first and principal case in this state, and which at first glance seemingly looks the other way from the views we have expressed, is *Howell* v. *Foster*, 65 Cal. 169. The conclusion there arrived at is based upon the decisions we have cited from other states; but, whatever the court might do if another case with identical facts to those there shown was presented before it, it is unnecessary to say, for this case is different in material respects from *Howell* v. *Foster, supra.* That was not a case of cash rent. Indeed, there is no agreement to pay any rent whatever. The word "rent," or its equivalent, is not found at any place in the contract. It is practically a contract for hiring, the wages of the man performing the labor and cultivating the land to be paid by three-fourths of the grain raised upon the land, delivered to him by the owner, after deducting certain moneys for advances previously made. *Wentworth* v. *Miller*, 53 Cal. 9, *Sunol* v. *Molloy*, 63 Cal. 369, and *Blum* v. *McHugh*, 92 Cal. 497, which are cited in respondent's brief, are not in point upon the question here involved.

For the foregoing reasons the judgment is reversed and the cause remanded.

HARRISON, J., VAN FLEET, J., McFARLAND, J., TEMPLE, J., and HENSHAW, J., concurred.