[Sac. No. 154.   Department Two.—May 25, 1897.]

MARY A. FERGUSON, APPELLANT, *v.* J. E. MURPHY ET AL., RESPONDENTS.

LANDLORD AND TENANT—UNRECORDED LEASE RESERVING TITLE TO CROP AS SECURITY FOR RENT—CHATTEL MORTGAGE.—An unrecorded lease assuming to reserve the title to the crop in the lessor, as security for a cash rent to be paid by the lessee, without complying with the chattel mortgage law, is not effectual to create a lien for the rent, and a chattel mortgage of the crop executed in due form by the lessee, to secure advances made to him by a third person who has no knowledge of the terms of the lease, confers a paramount right upon the mortgagee as against the lessor.

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order denying a new trial.   JOSEPH H. BUDD, Judge.

The facts are stated in the opinion.

*James A. Louttit*, for Appellant.

Under the terms of the lease the appellant was the owner of the crop until the rent reserved should have been paid. (*Stockton Sav. etc. Soc.* v. *Purvis*, 112 Cal.

236; 53 Am. St. Rep. 210; *Howell* v. *Foster,* 65 Cal. 173; *Wentworth* v. *Miller,* 53 Cal. 9; *Sunol* v. *Molloy,* 63 Cal. 370; *Blum* v. *McHugh,* 92 Cal. 497.)   The lease was not required to be recorded in order to protect her rights thereunder as against the crop mortgage.   (*Stockton Sav. etc. Soc.* v. *Purvis, supra.*)

*Nicol & Orr,* for Respondents.

In this state a landlord has no lien for rent reserved in the lease, or for the value or use or occupation of the land.   (*Hitchcock* v. *Hassett,* 71 Cal. 331.)

BELCHER, C.—This is an action to recover possession of 1,400 sacks of wheat and 760 sacks of barley, or the sum of $2,300, the value thereof, and $250 damages for detention.

The case was tried by the court without a jury, and the judgment was in favor of the defendants, from which and from an order denying a new trial the plaintiff appeals.

The facts of the case as disclosed by the record are in substance as follows: In September, 1892, one James Caven, being then the owner of the lands described in the complaint, leased the same by written lease to one White for the term of three years from the fifteenth day of that month, at the yearly rental of $1,100, " payable only in gold coin of the United States of America on or before the fifteenth day of September of each year during this lease." The lease further stated that it is " understood and agreed by the parties hereto that all the crop of wheat, barley, or hay, or other crops that may be raised on said land, shall be and is the property of the first party, until the said yearly rental of $1,100 is fully paid; and that no crops shall be removed from said land until said yearly payment of $1,100 is paid, without the written consent of said first party."

In October, 1893, the parties agreed in writing that the rent for the year ending September 15, 1894, should be $1,650, instead of $1,100.

The lease was not recorded until February 9, 1894, but, at the date thereof, White entered into possession of the leased premises and thereafter occupied and farmed the same as tenant. In the fall of 1893, defendants Murphy and Frankenheimer furnished to White wheat and barley with which to seed the leased lands, and, on December 6, 1893, to secure payment of such advances, and such other advances as should thereafter be made by them to him, he executed to them a crop mortgage upon "all the right, title, and interest of said party of the first part of, in, and to all the crops of wheat and barley now growing or to be grown during the season of 1893 and 1894" on said leased lands and other lands farmed by him. This mortgage was duly verified and acknowledged, and on January 24, 1894, was duly recorded.

After the said mortgage was recorded, an agent of Caven called upon Mr. Frankenheimer and informed him of the Caven lease, and that Caven claimed a lien on the crops raised on said land for the rent thereof, and, subsequently, two or three conversations were had between the parties in reference to the said claim and the disposition of said crop. It was finally understood and agreed that Murphy and Frankenheimer should attend to the harvesting of the crop, and that, when harvested, it should be hauled to them in the city of Stockton and be disposed of by them.

Subsequently Murphy and Frankenheimer, under the provisions of their said mortgage, advanced money for the insurance of said crop, for harvesting and sacking the same, and for hauling the same to Stockton; and all of the crop raised on said leased premises, consisting of 1,200 sacks of wheat, and 760 sacks of barley, of the value of $1,800, was, with the consent of Caven, and in accordance with the agreement between him and Murphy and Frankenheimer, hauled to Stockton, and delivered to them, and the same has ever since been in their possession.

As to the fact that the crops were to be harvested by

defendants, and, when harvested, were to be hauled to the city of Stockton, and disposed of by them, there is no conflict in the evidence; but as to what was to be done with the money received from the sale thereof there was a sharp conflict in the evidence. Plaintiff claimed that the understanding was that Murphy and Frankenheimer were to attend to the collection of the $1,650 due for rent, and were to pay the same without regard to the satisfaction of their own claim. Defendants, on the other hand, claimed that the understanding was that, after they had received payment of the amount which should be due them under the provisions of their crop mortgage, the balance was to be paid to Caven.

On June 20, 1894, Caven and his wife assigned the said lease, " together with all advantages to be derived therefrom," to the plaintiff, and on August 31st thereafter she demanded of defendants, in writing, that they immediately surrender and deliver to her the wheat and barley raised on said leased premises, stating that the said wheat and barley was her property, and she was entitled to take and retain possession of the whole thereof " until the rental of the said premises, amounting to the sum of $1,650 for the current year, has been paid."

The defendants refused to comply with this demand, and thereupon this action was commenced. The court below found, upon all the disputed questions, in favor of the defendants, and we think the findings were justified by the evidence, and must be sustained.

Appellant contends that, under the terms of the lease, she was the owner of the crop until the rent reserved should be paid, and that it was not necessary that the lease be recorded in order to protect her rights thereunder as against the said crop mortgage.

The lease expressly provided that the rent should be paid only in gold coin, and the evident purpose of the provision, that the crop should be the property of the lessor, and should not be removed from the leased premises without his written consent until the rent

should be fully paid, was to create a lien on the crop to secure payment of the rent. The lessee had a right to control the crop, and no right to the possession of any part thereof was given to the lessor.

The question, then, is, Did the lease vest in the lessor title to the crop raised as against the mortgagees?

The lease was not recorded, and the defendants had no knowledge of its terms and conditions when they took the crop mortgage. "A landlord in this state has no lien for rent reserved, or for the value of the use and occupation of property" (*Hitchcock* v. *Hassett*, 71 Cal. 331), and, "it must be remembered, in general, that the policy of the law is against upholding secret liens and charges to the injury of innocent purchasers or encumbrancers for value." (*Palmer* v. *Howard*, 72 Cal. 293; 1 Am. St. Rep. 60.)

This case, in our opinion, is, in all material respects, like that of *Stockton Sav. etc. Soc.* v. *Purvis*, 112 Cal. 236; 53 Am. St. Rep. 210. In that case the plaintiff, being the owner of a tract of land, leased the same to one Dallas for the term of one year, upon the oral understanding and agreement that Dallas should farm the land, and pay a cash rental of $2,140; and it was agreed between the parties that the title to the crops raised thereon during the term was to remain in the plaintiff, and that the crop, when harvested, was to be hauled to the nearest warehouse, and stored in the name of plaintiff, and, when sold, plaintiff was to receive from the proceeds its rent, and the overplus, if any, was to go to and be the property of Dallas. Under this agreement Dallas entered upon the land, and planted a crop of wheat thereon. Before the wheat was harvested a creditor attached the growing crop as the property of Dallas, and the action was brought against the attaching officer for conversion, plaintiff claiming to be the owner of the entire crop.

It was held, in effect, that the lease and accompanying agreement must be construed as intended to give security to the landlord for payment of the cash rental,

and to create a lien upon the growing crop, as such security, without complying with the chattel mortgage law, but that they were ineffectual for that purpose, and the plaintiff could not recover.

It is objected that that case differs from this, because there the agreement was in parol, while here it is in writing. We see no material difference between the two agreements in this respect. An oral lease of real property for a term not exceeding one year is just as operative and binding as a written lease, and, in such case, an oral agreement, like that in controversy, would be as effective as it would be if in writing. In each case the invalidity of the lien, which the plaintiff claimed to have acquired, and to have a right to enforce, arose from the fact that the agreement relied upon was simply an attempt to obtain the advantages of a chattel mortgage without complying with the provisions of the statute upon that subject.

Our conclusion is that the plaintiff had no such interest in the property sued for as entitled her to maintain the action, and we, therefore, advise that the judgment and order appealed from be affirmed.

HAYNES, C., and SEARLS, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

McFARLAND, J., TEMPLE, J., HENSHAW, J.