AMOS KELLEY *vs.* GEORGE O. GOODWIN, and another.

Aroostook.    Opinion December 6, 1901.

*Landlord and Tenant.    Crops.    Mortgage.*

1.  Ordinarily, the tenant of a farm becomes the owner of the crops, and may sell or mortgage them.

2.  When a lease of a farm provided that "all the crops raised on said farm the coming season" should be the lessor's and remain his property until the rent was fully paid, *held;* that the title reserved by the lessor was not absolute, but was in the nature of security only, as by mortgage.

3.  Such crops not in actual existence when the lease was made were not then subject to mortgage at common law.

4.  But inasmuch as they had a potential existence, a mortgage of them, though not good as a conveyance or a reservation, was valid as an executory agreement, enforceable in equity, and hence constituted an equitable mortgage.

5.  To shut out or postpone claims of subsequent purchasers, or mortgagees, an equitable mortgage must be recorded, the same as a legal one; or possession must be taken by the mortgagee.

6.  The agreement between the landlord and tenant, reserving title in the former as security for rent, was a valid one; but until the crops came into existence, the rights of the parties rested in contract merely. When the crops came into existence, the legal title was in the tenant.

7.  The defendant claiming under a title derived from a mortgage of the crops when growing, recorded earlier than the plaintiff's equitable mortgage, had a superior title.

Exceptions by plaintiff.    Overruled.

Trover for a crop of potatoes claimed by defendants under a mortgage.    The material facts appear in the opinion.

*W. R. Lumbert and B. L. Fletcher*, for plaintiff.

*Ira G. Hersey and John E. Magill*, for defendants.

SITTING:    WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, POWERS, JJ.

SAVAGE, J.    As we construe the contract, the plaintiff, on November 7, 1899, leased his farm to one Rogers for one year, and for rental, Rogers agreed to pay one hundred and twenty-five dol-

lars, before October 20, 1900. The lease contained the following clause: "And all crops raised on said farm the coming season, next shall be mine [plaintiff's] and remain my property until said rent is fully paid." In the spring of 1900, Rogers planted on the farm a crop of potatoes, which on June 27, 1900, he mortgaged to Hopkins Brothers. Their mortgage was recorded June 29, 1900. At a later hour on the same day, the plaintiff had his lease to Rogers recorded. At the time their mortgage was taken and recorded, Hopkins Brothers had no knowledge of the plaintiff's claim upon the property. In the fall of 1900, Rogers dug the potatoes and sold them to the mortgagees, and received payment by credit upon the mortgage debt. The mortgagees sold them to the defendants, who are here sued in trover for their value.

Ordinarily, the tenant of a farm becomes the owner of the crops grown, and may sell or mortgage them. *Bailey* v. *Fillebrown*, 9 Maine, 12; *Dockham* v. *Parker*, 9 Maine, 137; *Sherburne* v. *Jones*, 20 Maine, 70; *Richards* v. *Wardwell*, 82 Maine, 343. A sale by mortgagor to mortgagee vests complete title in the latter. Hence it follows that the sale of the potatoes by Rogers to Hopkins Brothers, and by them to the defendants, gave the latter a perfect title, unless the plaintiff had a superior title, because an earlier one.

He claims that he had. He claims that Rogers had no title in the potatoes which he could sell or mortgage; that by the terms of the lease, the title to all crops was reserved to the plaintiff himself; hence that no title passed to Hopkins Brothers, either by Rogers' mortgage or by his subsequent sale. The defendants answer that if the reservation were intended to be an absolute one, it was null and void as repugnant to the grant, *Turner* v. *Bachelder*, 17 Maine, 257, citing Co. Lit. 142, a; and that if it were intended to be conditional, as security for the rent, it constituted a mortgage, either legal or equitable, and must have been recorded in order to prevent subsequent liens from attaching, or subsequent sales by the mortgagor from conveying title to innocent purchasers.

We think we may disregard the former horn of the dilemma, for it is clear, from the language of the lease itself, that the lessor attempted to reserve title as security for rent. The contract,

therefore, had the nature of a mortgage. *Woodman* v. *Chesley*, 39 Maine, 45. But when the lease was made, in the fall of 1899, the crops were not actually in existence. Hence they were not then subject to mortgage at common law. *Shaw* v. *Gilmore*, 81 Maine, 396. But they had what is termed a potential existence, and a mortgage of them, though not good as a conveyance or a reservation, was valid as an executory agreement. Jones Chattel Mortgages, § 174. Such an agreement is enforceable in equity, and hence is called an equitable mortgage. Such, we think, was the agreement under consideration. The agreement between the plaintiff and Rogers was a valid one; but until the crops came into existence, the rights of the parties rested in contract merely. When the crops came into existence, the legal title was in the tenant Rogers. *Bailey* v. *Fillebrown*, supra; *Dockham* v. *Parker*, supra; *Garland* v. *Hilborn*, 23 Maine, 442; *Butterfield* v. *Baker*, 5 Pick. 522; *Munsell* v. *Carew*, 2 Cush. 50. In *Kelley* v. *Weston*, 20 Maine, 232, the principles upon which the cases of *Bailey* v. *Fillebrown* and *Dockham* v. *Parker* were decided are clearly set forth, and it is useful to repeat the language of the court. " In these cases," the court said, " the provision that it should be security for the rent shows that the property was in the tenant, and not the landlord. And when the produce is to be holden as security, it has been considered necessary that the landlord should in proper time manifest his intention so to appropriate it by taking possession or control of it, to prevent its being taken by other creditors. But when by the terms of the agreement, a portion of the produce is never to become the property of the tenant, there can be no such necessity."

So it was in the power of the tenant Rogers to sell or mortgage the crops, so far as the rights of innocent parties were concerned, in disregard of his contract with his lessor, unless the latter either took possession or recorded his mortgage. *Beeman* v. *Lawton*, 37 Maine, 543. For to shut out or postpone claims of subsequent purchasers, or mortgagees, an equitable mortgage must be recorded, the same as a legal one. *Putnam* v. *White*, 76 Maine, 551. Or possession must be taken.

Inasmuch as the mortgage, under which the defendants claim, was recorded earlier than the plaintiff's equitable mortgage, their title was superior to the plaintiff's title. And for having taken the potatoes and applied their value towards the payment of the mortgage debt, Hopkins Brothers are not liable to the plaintiff. Neither are the defendants, their vendees, for having purchased the potatoes.

Such, in effect, was the instruction of the presiding justice to which exceptions were taken.

*Exceptions overruled.*