McGARVEY, Appellant, v. PRINCE et al., Respondents.

(143 N. W. 380.)

1. **Lien—Mortgage—Lease—Possession of Crops as Security.**

   A farm lease providing that all crops grown on the premises "shall remain in possession of" lessor till payment of rent, while giving right of possession to lessor, does not operate to vest legal title thereto in him, and, therefore, does not create a mortgage lien on the crops.

2. **Landlord and Tenant—Security for Rent—Pledge Contract—Possession—Provisions in Lease.**

   A provision in a farm lease that all crops grown on the premises "shall remain in the possession of" the lessor till payment of rent, held to entitle lessor, the rent being unpaid, to recover possession of grain grown on the land from a purchaser from lessee with notice of the facts, as a pledge, said clause in the lease constituting a valid contract to pledge the crops as security, under Sec. 2105, Civ. Code; under which contract lessor had the right to take possession in order to perfect his pledge.

   McCoy, J., concurring in the result.   Whiting, P. J., and Gates, J., dissenting.

(Opinion filed October 23, 1913.)

Appeal from Circuit Court, Sanborn County.   Hon. FRANK B. SMITH, Judge.

Action by William McGarvey against O. C. Prince and another, to recover possession of crops grown on land covered by lease from plaintiff to defendant Prince. From an order sustaining a demurrer to the complaint, plaintiff appeals. Reversed and remanded.

*L. L. Lawson,* and *B. W. Baer,* for Appellant.

By reason of said clause plaintiff had a lien upon said crops in dispute, until the rent for the land was satisfied.

The defendant South Dakota Grain Company had actual notice of this contract between the parties. Hence are bound by the agreement between the defendant Prince and the plaintiff.

An agreement which creates a charge upon specific property is in equity an effectual lien as between the parties without a change of possession. Jones on Liens, Secs. 29, 30.

The parties may contract to have the title to the grain remain in the landlord until a division. Jones v. Jones, 17 S. D. 256; Lyon v. Phillips, 20 S. D. 607; Yates v. Kinney, 27 N. W.

132; Fayvalie v. Brotch, 52 Iowa, 88; Consolidated Co. v. Hanley, 7 S. D. 229; Sheibe v. Cult, 56 Mo. 437; W. Iverson v. Soo Elevator, 22 S. D. 638; Secs. 2024, 2025, Civil Code.

What does the word "possession," in this instance mean?

Where a lessee of farming lands agrees to pay the lessor a part of the crop as rent and to give the lessor possession of the whole crop until the rent is paid, a sale of crop by lessee does not pass the title as against the lessor. Wentworth v. Miller, 53 Cal. 9.

In Cyc., Vol. 18, 842, the term is defined as "simply the owning, as having a thing in one's power; the present right and power to control a thing, etc., either as owner or as the proprietor of a qualified right in it, and either held personally or by another person who exercises it in one's place and name. Holding of a thing in one's power and control." Redfield v. Utica Ry. Co., 25 N. Y. 54; Cyc., Book 10, p. 924.

By the agreement of the parties, the plaintiff always had constructive possession of the grain.

*S. A. Ramsey,* for Respondents.

All of the cases, referred to in appellant's brief, are cases, where the agreement entered into between the landlord and tenant provided that the landlord should have a share of the crop, and that the title to the same should remain in the landlord until a division thereof had been made; and they are not applicable to this case, for, in this case the landlord surrendered the possession of the premises to the respondent Prince, and agreed upon his part to accept a cash rent of a fixed amount for the use of the premises for the time stated in the lease.

Appellant has no lien that he can enforce, for he does not and never did have possession of the grain grown upon the premises. The law implies no lien from such a contract. Jones on Liens, Vol. 1.

Possession is essential to create, and essential to preserve a lien at common law, and frequently, under a lien created by statute as well. Smith v. Greenop, 26 N. W. 832.

SMITH, J. Appeal from an order of the circuit court of Sanborn county, sustaining a demurrer to the complaint in the action. The complaint, in substance, alleges that on January 12,

1912, the plaintiff, under a written lease, rented certain farm lands to the defendant Prince. The lease is set out in full in the complaint. The defendant Prince thereby obligates himself to pay an annual cash rental of $800, $400 payable November 1, 1912, $400, June 1, 1913. The contract is the ordinary form of farm lease, creating the relation of lessor and lessee, and contains no provision material to this case, save the following: "All crops grown on above-described land shall remain in the possession of first party until the rent payments have been satisfied." The complaint further alleges that the defendant Prince entered upon and cultivated the leased premises during the summer of 1912, and raised a crop of small grain thereon, worth about $800; that on the 8th day of August, 1912, the defendant Prince sold and delivered said grain to defendant the South Dakota Grain Company, operating an elevator at Letcher, S. D.; that said written lease was filed and recorded in the office of the register of deeds of Sanborn county, on March 27, 1912, and that the South Dakota Grain Company had knowledge of the contents of said lease, and the rights of plaintiff thereunder; that the South Dakota Grain Company is in possession of said grain, claiming to be the owner thereof, and refusing to surrender possession thereof upon demand of plaintiff. The prayer of the complaint is for recovery of possession of the grain, to the end that the same may be applied upon the rental of said land, or that the plaintiff have judgment against the defendant elevator company for the value thereof, in the sum of $800, with interest. The complaint also alleges nonpayment of rent due November 1, 1912, in the sum of $400. To this complaint the defendants demur jointly, on the ground that the same does not state facts sufficient to constitute a cause of action.

The only question is whether the clause in the lease, providing that all crops grown on the leased premises shall remain in possession of the lessor until rent payments have been satisfied, operates to create a lien as against the lessee and a purchaser with notice. The legal right of lessor and lessee to agree that the title and control of crops grown on leased premises may be vested in the lessor until the lessee's covenants have been fulfilled or the crops divided has long been recognized in this state. Con. Land & Irrigation Co. v. Hawley, 7 S. D. 229, 63 N. W. 904. This

rule was not changed by the enactment of chapter 95, Laws 1897 (Civil Code, §§ 2091, 2092), requiring the delivery of a copy of a chattel mortgage to the mortgagee, and a receipt therefor, over the signature of the mortgagor, and declaring a chattel mortgage not containing such receipt to be null and void. Kennedy v. Hull, 14 S. D. 234, 85 N. W. 223; Dobbs v. Atlas Elevator Co., 25 S. D. 177, 126 N. W. 250; McFadden v. Thorpe Elevator Co., 18 N. D. 93, 118 N. W. 242.

This court in a number of cases has recognized the validity of such contracts. Lyon v. Phillips, 20 S. D. 607, 108 N. W. 554; Lallier v. Pac. El. Co., 25 S. D. 572, 127 N. W. 558. In this class of cases, the rights of the parties apparently turn largely upon the vesting of the title to the crops grown on the owner's land, as fixed and governed by the terms of the contract. Con. Land & Irrig. Co. v. Hawley, supra; Lallier v. Pac. El. Co., supra. It was held by this court in Lyon v. Phillips, 20 S. D. 607, 108 N. W. 554, that under a contract providing that the title to a crop should remain in the owner of the land until the conditions of the contract had been complied with, the party who raised the crop had an equitable interest therein, which he might mortgage. In Lawrence v. Phy, 27 Or. 506, 41 Pac. 671, the same conclusion was reached upon a review of the authorities. Yates v. Kinney, 19 Neb. 275, 27 N. W. 132; Farnum v. Hefner, 79 Cal. 575, 21 Pac. 955, 12 Am. St. Rep. 174; Sanford v. Modine, 51 Neb. 728, 71 N. W. 740; De Vaughn v. Howell, 82 Ga. 336, 9 S. E. 173, 14 Am. St. Rep. 162, and note. There seems to be little conflict in the authorities sustaining this class of contracts. The Supreme Court of California, however, in Stockton Savings & L. Soc. v. Purvis, 112 Cal. 236, 44. Pac. 561, 53 Am. St. Rep. 210, holds that such a contract is in effect an attempt to create a secret lien or mortgage which is void as against an attachment creditor, and in contravention of the chattel mortgage act. In Ferguson v. Murphy, 117 Cal. 134, 48 Pac. 1018, upon a similar contract, that court again held, no matter what the language used by the parties, that it had no other effect than to create a lien on the crop as security, and was ineffectual for that purpose as against a mortgagee without notice. This court, however, has long been committed to the view that such contracts are valid and vest the legal title to the crop in the landowner. C. L.

I. Co. v. Hawley, 7 S. D. 229, 63 N. W. 904; Lallier v. Pac. El. Co., 25 S. D. 572, 127 N. W. 558; Savings Bank v. Canfield, 12 S. D. 330, 81 N. W. 630; Olson v. Ausdal, 13 S. D. 26, 82 N. W. 89.

The contract in the case before us does not fall within the rule established in these cases, for the reason that it does not purport to vest the legal title to the crops in the lessor. It is a straight lease, and creates the relation of landlord and tenant. The only question is whether the provision in the lease that "all crops grown on above-described land shall remain in possession of the first party until the rent payments have been satisfied" operates to create a valid lien to secure payment of the stipulated rents. A lien is a charge imposed upon specific property by which it is made security for the performance of an act (Civ. Code, § 2017), is created by act of the parties (Civ. Code, § 2022), and transfers no title to the property (Civ. Code, § 2026).

Section 2044, Civil Code, provides: "Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage, except when in the case of personal property it is accompanied by actual change of possession, in which case it is to be deemed a pledge."

Section 2046: "The fact that a transfer was made subject to defeasance on a condition, may, for the purpose of showing such transfer to be a mortgage, be proved, except as against a subsequent purchaser or incumbrancer, for value and without notice, though the facts does not appear by the terms of the instrument."

Sections 2091 and 2092 provide:

"Sec. 2091. Every mortgagee of a chattel mortgage shall at the time of its delivery make and deliver to the mortgagor a full, true and complete copy of such mortgage"

"Sec. 2092. No register of deeds shall receive or file any chattel mortgage which does not contain a receipt over the signature of the mortgagor to the effect that a copy of such mortgage has been received by him; and every chattel mortgage not containing such receipt shall be null and void."

The contract in this case, though recorded, contained no receipt in writing, to the effect that a copy of the instrument was

received by defendant Prince, and would be void as a chattel mortgage.

The only question remaining is whether the instrument creates the relation of pledgor and pledgee, as between McGarvey and Prince, and a vendee of the latter with notice.

The Civil Code of this state defines "pledge" as follows:

"Sec. 2104. Pledge is a deposit of personal property by way of security for the performance of another act.

"Sec. 2105. Every contract by which the possession of personal property is transferred, as a security only, is to be deemed a pledge.

"Sec. 2106. The lien of a pledge is dependent on possession, and no pledge is valid until the property pledged is delivered to the pledgee, or to a pledgeholder, as hereafter prescribed."

Section 2118 provides the remedy of a pledgee.

"Sec. 2118. When performance of the act for which a pledge is given is due, in whole or in part, the pledgee may collect what is due to him by a sale of property pledged, subject to the rules and exceptions hereinafter prescribed."

"Sec. 2129. Instead of selling property pledged, as hereinbefore provided, a pledgee may foreclose the right of redemption by a judicial sale under the direction of a competent court; and in that case may be authorized by the court to purchase at the sale."

Under these statutes no pledge is valid until the property pledged is delivered to the pledgee, or to a pledgeholder.

By section 2111, Civil Code:

"Sec. 2111. A pledgor and pledgee may agree upon a third person with whom to deposit the property pledged, who, if he accepts the deposit, is called a pledgeholder."

In the case at bar, the proposition is thus narrowed to the single question whether under this lease the crops may be deemed to have been constructively delivered to McGarvey, the lessor, in pledge, as security for payment of the rent reserved in the lease. Before passing to a consideration of this point, we note respondents' contention that a contract to pledge property such as crops not yet in existence must be deemed ineffectual, for the reason that no delivery is possible. Without attempting a further discussion of this question, we merely observe that the question does

not arise as to the crops involved in this case, which are already in existence, and to which a pledge, if valid, might attach. Civ. Code, § 2024. A pledge invalid for want of delivery may become effectual when the pledgee acquires possession of the property pledged. The same result would follow if the contract, as between pledgor and pledgee, may be deemed sufficient to place the pledgee in constructive possession of the property without actual manual delivery to him.

The earliest case to which our attention has been called in which this precise point arose is Keiser v. Topping, 72 Ill. 226. In that case, under a written contract construed to be effectual as a pledge, the property pledged remained in actual possession of the pledgor. The question was whether the written contract by its terms effected a constructive delivery to the pledgee, valid as between the parties. The court said: "It was, in fact, a contract giving appellees the right of possession and control of the sale of this title, for the purpose of enabling them to appropriate so much of its proceeds to the payment of their debts as should be necessary for that purpose, and nothing more. * * * As between the parties themselves, we see no objection to carrying the contract out according to their intentions, and no question of the rights of creditors or purchasers in good faith is before us." The contract was held valid as a pledge.

In Huntington v. Sherman, 60 Conn. 463, 22 Atl. 769, the court did not determine whether a pledgor might retain possession of the pledged property as agent of the pledgee, but in commenting upon that question says: "We have observed, however, for several years a growing laxity on the part of judges and jurists in the application of the principles of constructive pledge delivery, until now it must be confessed there are authorities of great weight and respectability that hold that, as between the parties themselves, an actual delivery may not be necessary, and that the possession may be regarded constructively where the contract places it" (citing Keiser v. Topping, supra, and other cases).

In First National Bank v. Day, 150 Iowa, 696, 130 N. W. 800, it was held as stated in the syllabus: "A paper styled 'Warehouse Receipt,' which describes property which the owner agrees to hold and deliver on demand as security for a debt,

creates a lien which is valid as between the parties, though the instrument is of no value as a statutory warehouse receipt."

In Grand Ave. v. St. Louis Union Trust Co., 135 Mo. App. 366, 115 S. W. 1071, is found an interesting discussion of the question of delivery and possession of property pledged. In that case the court says: " 'As between the parties themselves, their executory contract so upholds the transaction, while manual delivery continues incomplete, that the pledge security holds by construction, though accompanied by no actual change of possession. As between the pledge parties and general creditors, such transactions can only be attacked by the latter for fraud upon them; and, if there be a bona fide pledge contract, ineffectual for want of delivery, the pledgee may at any time take full possession, and maintain his priority over them; for here, at all events, is an executory contract in his favor. But as to those acquiring intervening rights in rem, without notice of the pledge, the pledgee who has not taken full possession generally fails to gain precedence, though to this might sometimes be opposed the suggestion that the pledgor continues in possession as his pledgee's bona fide agent, or possibly that the delay in completing certain formalities of delivery had occurred without fault on the pledgee's part, or that such formalities were under the peculiar aspect of the case needless.' Schouler, Bailments & Carriers, §§ 199, 203. Another author says: 'Possession of the property by the pledgor after it is pledged is not conclusive evidence of fraud, but is prima facie evidence of it. Such possession may be explained and proved to be a possession by the pledgor as agent or servant of the pledgee. If the circumstances make out a good reason for giving the custody and apparent control of the property to the pledgor, who undertook to act as the pledgee's agent, there may not even be any evidence of fraud; and, at most, the pledgor's possession will only be evidence, either that the pledge had been abandoned, or that the transaction was fraudulent.' " The court further quoting from Schouler, says: " 'What complicates pledge delivery still further in this connection is the doctrine, now well incorporated in our jurisprudence, that the agent to take and keep legal possession for the pledgee may be no other than the pledgor himself.' "

While there is some conflict in the decisions, we think the

modern authorities sustain the rule that as between pledgor and pledgee, and those acquiring an interest in the pledged property with notice, constructive delivery and possession by contract may be deemed sufficient to sustain the lien. We are of opinion that the clause in the lease, giving the lessor possession of all crops grown on the leased premises until the rent notes were paid, was intended and is sufficient to constitute a valid contract to pledge the crops as security for payment of the rent (section 2105, Civ. Code), which contract was valid as between the parties and third persons having knowledge thereof. As between the parties to the contract and such third person, the lessor had the right to take possession of the property for the purpose of perfecting his pledge in any event, and therefore can maintain this action. It is conceded by the allegations of the complaint and the demurrer that defendant elevator company purchased and took possession of the grain with the knowledge of plaintiff's rights under this lease, and therefore stands in no better position than the tenant himself. Van Zile on Bailments, (2d Ed.) par. 237a, 238. It follows that the trial court erred in sustaining the demurrer.

The order is reversed, and the case remanded for further proceedings according to law.

McCOY, J. I concur in the result reached by SMITH, J., but upon the grounds that said clause in the lease, in connection with the other provisions therein that the landlord might distrain for unpaid rent, constituted, as between the parties and those having notice thereof, a contractual equitable lien, and this wholly independent of the question of a chattel mortgage or a pledge. The tenant, after it came into existence, held said crop in trust for the landlord to satisfy such contractual lien. Esshom v. Watertown Hotel Co., 7 S. D. 74, 63 N. W. 229; 24 Cyc. 1249. Again the tenant went into possession and accepted benefits under this lease, and therefore is not in a position to assert the nonexistence or invalidity of said lien, no matter whether it be considered an equitable contractual lien, a chattel mortgage, or a pledge. 16 Cyc. 787.

WHITING, P. J., and GATES, J., dissent.