[Civ. No. 3437. Third Appellate District.—May 19, 1928.]

FIRST NATIONAL BANK OF TULARE, Respondent, v. JACOB ANDREAS, Defendant; GEORGE VAN VLEET, Appellant.

 

Frank Kauke for Appellant.

Russell & Heid for Respondent.

BUCK (G. F.), J., *pro tem.*—Replevin by the holder of a chattel mortgage to recover a crop of grapes grown on land the subject of an unrecorded agreement of sale between the defendant owner of the land and one Andreas. The crop mortgage in question was executed to the plaintiff by Andreas while Andreas was in possession of the land under his agreement of purchase from the defendant.

Defendant, relying upon certain provisions pertaining to the crops in the agreement of sale, alleges in his answer that he is the sole owner of the crops of grapes and that plaintiff acquired no interest therein by reason of the crop mortgage from Andreas.

The case was tried by the court without a jury and judgment was given for the plaintiff. Defendant appeals. The facts are fully set out in the findings and the appeal is on the judgment-roll alone.

██ The contract of sale and purchase of land between the defendant and Andreas is, so far as the land is concerned, in the usual form. The purchase price was to be paid in yearly installments and the vendee, Andreas, entered into possession.

From the beginning, the courts have held that "the position of a vendor where the purchaser is in possession under the contract is analogous to that of a mortgagee." (*Salmon* v. *Hoffman*, 2 Cal. 143 [56 Am. Dec. 322], and *Willis* v. *Wozencraft*, 22 Cal. 607, at p. 616.) Also, as stated in the recent case of *Orange Cove Water Co.* v. *Sampson*, 78 Cal. App. 334, at page 341 [248 Pac. 526, 529], with numerous citations: "Such a contract to convey, if enforceable, has the effect of vesting the equitable title in the vendee, leav-

ing in the vendor a dry legal title. It is in effect a grant of the whole beneficiary interest in the land. . . . The rule in equity is that by a contract of sale of real property for an adequate and sufficient consideration the vendee acquires an equitable title to such property and thereby becomes the equitable owner. The vendee, from the time of the making of such contract, is by equity treated as trustee of the purchase money for the vendor, while the latter is regarded as holding the land in trust for the purchaser as security for the payment of the purchase price until a conveyance of the legal title to the vendee is finally made." And, as regards the situation of a mortgagor and mortgagee touching the crops growing on mortgaged lands, the rule in this state is fully stated in the cases of *Simpson* v. *Ferguson,* 112 Cal. 180 [53 Am. St. Rep. 201, 40 Pac. 104, 44 Pac. 484]; *Modesto Bank* v. *Owens,* 121 Cal. 223 [53 Pac. 552]; *Cowdery* v. *London etc. Bank,* 139 Cal. 298, [96 Am. St. Rep. 115, 73 Pac. 196]; and the recent case of *Binney* v. *San Dimas, etc.,* 81 Cal. App. 213 [253 Pac. 346]. In its general effect, the rule is that until foreclosure, the mortgage creates no estate in the mortgagee and the mortgagor is entitled to such an absolute right and dominion over the crops that a crop mortgage executed by him to a third party takes precedence over any terms in the original mortgage seeking to give a prior security on the crops to the mortgagee. "A purchaser let into possession has, it is said, the same general rights with respect to crops raised by him as a mortgagor would have, and, so long as there has been no default on his part or he is permitted to remain in the possession, the crops raised and harvested belong to him." (27 R. C. L., p. 541, citing *Killebrew* v. *Hines,* 104 N. C. 182 [17 Am. St. Rep. 672, 10 S. E. 159, 251], where the rule is applied in a case somewhat analogous to the one at bar. See, also, *Able* v. *Gunter,* 174 Ala. 389 [57 South. 464], and *Speicher* v. *Lacy,* 28 Okl. 541 [115 Pac. 271, 35 L. R. A. (N. S.) 1066].)

But it is defendant's contention that, by reason of certain provisions inserted in the agreement of purchase and sale of the lands, Andreas, the vendee therein, became divested of his right to dispose of the crops while in possession of the premises. While it is the contention of the respondent that, by virtue of the provisions inserted in the contract con-

strued as a whole, the vendor at the most was attempting to acquire a secret lien on the crops, which was void and invalid as against the properly recorded crop mortgage of the plaintiff.

As already noted, the land was to be paid for in yearly installments and the contract also provided that the vendor might make advances to the vendee, and it was provided that all such advances made or indebtedness due from the vendee to the vendor or interest on such amounts from date of loan or advancement shall be payable to the vendor on the first day of November of each year, and may be kept and retained out of and from the moneys received from the marketing and sale of the crops. It was also provided as follows: "That each year the (vendee) will protect the crops of fruit and grapes growing and to be grown on said premises and when the same are in a condition for harvesting (he) will in a first-class, good and farmerlike manner, pick and prepare all said crops for market and will deliver all said crops in the market in the name of and as the property of the said Geo. Van Vleet (the vendor), and that at all times while said crops are growing and thereafter when harvested and delivered in the markets, the title and ownership thereof and the proceeds to be received therefrom shall be deemed to be and shall be vested in the said Geo. Van Vleet, and shall not be encumbered or disposed of, save and except as marketed in his name and his property, and all payments made on the sale thereof shall be payable to and shall be made to him by the respective purchasers thereof. . . .

"That as money and proceeds from the marketing and sale of said crops are received, the said first parties (the vendor) may and shall take therefrom any and all moneys that may have been advanced by them, or either of them, as hereinabove provided for, and may and shall also take therefrom the amounts due or to become due in such year as instalment of principal and interest on the purchase price of said property, *and shall thereupon credit and apply same* in payment of said sums respectively, and whenever the said first parties (the vendor) shall have received and applied the proceeds from the crops in any such year, or have otherwise received from the said second parties (the vendee) all amounts to be paid by them in such year,

whereby all amounts due and to become due in such year for said advances and instalments of principal and interest on said purchase price have been satisfied and discharged, *then* the said first parties (the vendor) will deliver over the *balance* of the proceeds from the sale of said crops to the second parties or to their order; or in the event that the full amount of said proceeds have not been collected and received by the said first parties, but are owing from the purchaser of any of said crops then such remaining balance (after said first parties have received the amounts so to be received by them in such year) shall be released unto and transferred over to and shall belong to the said second parties whereby collection of such balance may thereupon be made direct by the said second parties. . . . That should the gross proceeds from the sale of all the crops grown and produced on said premises in any year (through no neglect or fault of the said second parties) be insufficient to pay and discharge the instalments of interest and principal of said purchase price to be paid in any such year as hereinabove set forth, then the said first parties will not require the said second parties to make up the deficiency from other sources, but the amount of such deficiency shall be added to or remain a part of the unpaid portion of said purchase price and bear interest at the rate hereinabove specified (seven per cent per annum) until paid.''

An examination of the foregoing provisions relating to the crops growing on the premises would indicate that though in good set terms the vendor has stated that ''the title and ownership'' of the crops and the proceeds to be received therefrom ''shall be deemed to be and shall be vested in the vendor'' that, nevertheless, the vendor has by the same contract assumed obligations which are inconsistent with and nugatory of his asserted claim of absolute ownership. For, first, after he has had the crops marketed by his vendee, he ceases to enjoy any right as owner, to apply the proceeds thereof to his own benefit generally, but he becomes immediately obligated to apply such proceeds to the payment of the existing indebtedness between himself and the vendee; and, second, the vendor further obligates himself, after he has made such application for the benefit of the vendee, to ''then . . . deliver over the balance of the proceeds from the sale of such crops to'' the vendee.

To say the least, these provisions are each of them inconsistent with any claim of absolute ownership, and are consistent only with the position of a creditor who is attempting only to secure the payment of a specific debt. As was stated in the case of *Stockton Savings & Loan Society* v. *Purvis*, 112 Cal. 236 [53 Am. St. Rep. 210, 44 Pac. 561], where a similar question was involved: ''It further appears that the grain was to be hauled to a certain warehouse when harvested, and thereupon sold by the plaintiffs (the asserted owner as here), and the proceeds applied, first, to the payment of its cash rent of two thousand one hundred and forty dollars, and the balance, if any, to go to the lessee. It would be a peculiar construction of this contract, and even an absurd one, to hold that plaintiff was to sell his own crop of grain, and apply the proceeds to the payment of a claim owned and held by it against the lessee. This clause of the contract plainly indicates an attempt by the lessor to hold the crop, when harvested, as security for rent.''

Also the provisions of the contract relating to the crop fail to create a conditional sale of the crop for the reason that they nowhere provide that the vendee may or shall by the fulfillment of any condition ever become the buyer or owner of said crop. Therefore, no analogy arising out of cases upholding conditional sales exist in this case, since the reason for the rule favoring conditional sales is not applicable herein. As stated in the case of *Marker* v. *Williams*, 39 Cal. App. 674 [179 Pac. 735, 737]: ''The law of California very properly favors the conditional contract of sale. It has became very largely a factor in the purchase and sale of personal property, and, too, of that class of machinery and appliances commonly used in connection with real estate. It should be the policy of courts to afford every proper protection to upholding the conditions of such sales both in the interest of the buying and selling classes.''

Also, the cases cited by counsel pertaining to the relation of landlord and tenant are not entirely applicable. It is true, of course, that the law does uphold provisions in an agreement between landlord and tenant, by which the landlord, in order to obviate the strict terms of the lease, protects himself by making himself a tenant in common of the crop prior to its severance. (*Baughman* v. *Reed*, 75 Cal.

319 [7 Am. St. Rep. 170, 17 Pac. 222] ; *Woodsend* v. *Chatom,* 191 Cal. 72 [214 Pac. 965].) But our courts have not gone to the extent of allowing the landlord, by the use of words in conflict with the actual substance of the contract, to secure himself by a secret lien on all the crops for advances made by himself, as against a third party holding a properly executed chattel mortgage on the crops. In this particular, the rule applied by our courts is not in harmony with the rule applied in the North Dakota cases cited by counsel, notably the case of *Merchants State Bank* v. *Sawyer Farming Cooperative Association,* 47 N. D. 375 [182 N. W. 263] (also reported with annotations on pages 1362 to 1368 of vol. 14, A. L. R.). See, also, *Ferguson* v. *Murphy,* 117 Cal. 134 [48 Pac. 1018], and *Stockton Savings & Loan Society* v. *Purvis,* 112 Cal. 236 [53 Am. St. Rep. 210, 44 Pac. 561]; also, *Kelley* v. *Goodwin,* 95 Me. 538 [50 Atl. 711], and *McNeal* v. *Rider,* 79 Minn. 153 [79 Am. St. Rep. 437, 81 N. W. 830]. In fact, the rule applied in our courts seems to be in full harmony with the vigorous dissenting opinion reported in the Dakota case relied upon by the appellant herein.

Since, therefore, the contract in the case at bar is in substance and effect no more than an attempt, in contravention of the statute, to create a secret lien on personal property against a subsequent encumbrancer in good faith and without notice, the judgment of the lower court herein is affirmed.

Hart, Acting P. J., and Plummer, J., concurred.