Common Pleas Court of Pickaway County.

A. C. WILKES V. LYMAN E. PENN, ET AL.

Decided September 6, 1932.

*Barton Walters*, for plaintiff.

ADKINS, J.

The facts are the Union Central Life Insurance Company on August 17, 1932, had a first lien on the property described in plaintiff's petition to the amount of $5723.88.

That the plaintiff had a second mortgage on said premises amounting to $——, and this proceeding is to foreclose this, the plaintiff's second mortgage; the real estate sold to plaintiff for the sum of $7816.89. This sum less the first lien by The Central Life Insurance Company leaves $2193.01. The judgment rendered in favor of A. C. Wilkes is for the sum of $2856.29, after paying costs $63.64, sum due The Union Central Life Insurance Company $769.15 and unmatured unpaid balance $4954.73, leaving a sum of $1138.60 to be paid on the plaintiff's, A. C. Wilkes, claim, and leaving a deficiency due on said indebtedness to A. C. Wilkes, amounting to $1767.69.

The defendant, Lyman E. Penn, remained in possession of this real estate described in plaintiff's petition and from the 19th to the 26th day of May planted thirty-five acres of corn.

No receiver was appointed by the court in this proceeding.

The plaintiff, A. C. Wilkes, asserts his right to this growing corn under his real estate mortgage, claiming a provision in said mortgage for "rents and profits."

The Second National Bank of Circleville claims a chattel mortgage on said growing corn. This chattel mortgage was executed and filed in the recorder's office on May 14, 1932, before the corn was planted, the corn having been planted from the 19th to the 26th day of May, 1932.

This corn is also claimed by Nell Roberts under a chattel mortgage executed and filed on the 28th day of May, 1932.

Mr. Wilkes claims pledge of "rents and profits" in his mortgage and that he should have the corn by the terms of said mortgage.

In the case of *Norwood Savings Bank* v. *Alfred Romer, et al.*, 36 O. L. R., 589, the first syllabus:

"A mortgagee of real estate, whose mortgage includes a pledge of rents and profits, is not entitled to such rents and profits until it takes possession of the property through a receiver, after condition broken, and consequently it may not have an accounting of rents and profits alleged to have been collected by a junior mortgagor prior to the appointment of a receiver."

Under this authority Mr. A. C. Wilkes would not be entitled to this corn crop, he not having reduced it to possession and no receiver having been appointed.

The Second National Bank of Circleville also claims this corn under a chattel mortgage executed and filed on the 14th day of May, 1932. The evidence shows that this corn was not planted until after May 14, 1932; that is, it was planted beginning the 19th day of May and continued and was finished on the 26th day of May, 1932.

There is no statute in Ohio governing this matter, and our state courts have not directly adjudicated the question. It is a general proposition of law:

"Where a mortgage is given on crops, the seed to produce which having not been sown, it is held in some jurisdictions, in the absence of statutory provisions to

the contrary, that the mortgage is void." Vol. 11 Corpis Juris, Section 51, page 443 and numerous citations for various state courts.

"A growing crop is defined as one only that is at the time nourished and supported by the soil and not yet cut or threshed." 69 Alabama, 435; 7 Illinois, 73; 41 New Hampshire, 456; 2 Montana, 440.

"It is however held and is probably the general law that a chattel mortgage given on a crop before the seed shall have been planted in the ground, yet, on its coming into existence, may confer a lien on the crop, which a *court* of *equity* will enforce against persons other than *bona fide* purchasers without notice." *Hurst* v. *Bell*, 72 Ala.; *Apperson* v. *Moore*, 30 Ark. 56; *Roy* v. *Goings*, 112 Ill. 656; *Kelley* v .*Goodwin*, 95 Maine 538; *Swinney* v. *Gonty*, 83 Mo. 549; *Richardson* v. *Washington*, 88 Texas 339.

In the case of *Hurst* v. *Bell*, above cited, the court made the following observations:

"It is true, that unplanted crops, or other things not having existence actual or potential, but the future acquisition of which is merely expected or contemplated, are not the subject of sale, assignment, or mortgage, according to the common law."

"A different doctrine, however, prevails in a *court* of *equity*. The sale, or mortgage, or assignment, does not pass legal title to such property, unless, after it comes into existence, the vendor or mortgagor shall do some new act for the purpose of ratifying or carrying it into effect."

"*Nevertheless, it creates an equitable interest, attaching to the property when it is acquired, or when it comes into existence, that a court of equity will enforce and protect against all persons other than bona fide purchasers without notice.*" *Hurst* v. *Bell*, 72 Ala., 336-340; *Cheatham* v. *Tennell* (Ky.) 186 S. W. 128.

In the last mentioned case rendered by the Kentucky Court of Appeals, May 30, 1916, at page 128, 186 S. W. Third syllabus reads as follows:

"Since the assignee of a mortgagor occupies the same position as his assignor, a prior mortgage on future crops not yet in existence gives rise to an equitable lien in favor of the mortgagee as against the subsequent assignee; the mortgage being valid between the parties."

Fourth syllabus:

"Equitable rights may grow out of a contract that will be available to protect parties to the contract from disadvantage or loss which they would sustain if their rights were to be determined by the strict letter of the contract, or if they could not assert any claim except such as existed by the terms of the contract itself."

It is stated in Jones on Chattel Mortgages, Section 170, that:

"In the preceding sections its has been shown that a mortgage of future property is void at law, as against others acquiring an interest in it, except in case the mortgagee takes possession of such property before any adverse interests have been acquired.

"A different rule, however, prevails in equity. There, while such mortgage itself does not pass the title to such property, it creates in the mortgagee an equitable interest in it, *which will prevail* against judgment creditors and others, although the mortgagee has not taken possession of the property, and the mortgagor has done no new act to confirm the mortgage. The ground of the doctrine is that the mortgage, though inoperative as a conveyance, *is operative* as an executory agreement, which attaches to the property when acquired, and in equity transfers the beneficial interest to the mortgagee; the mortgagor being regarded as a trustee for him in accordance with the familiar maxim, *'That equity considers that done which ought to be done.'*" Also *McCafferty* v. *Woodin*, 65 N. Y. 459.

In 6 Cyc. 1052 the following rule is laid down:

"It is the settled american rule, following an early decision of Judge Story, that a mortgage of future property, although invalid at *law*, is good in *equity*, as against the mortgagor and *all persons* claiming through him, *with notice*, or voluntarily, or in bankruptcy, even if the mortgagee has not taken possession of the property, and the mortgagor has done no new act to confirm the mortgage. The mortgage operates as a *contract* to assign as soon as the mortgagor acquires the property, which lien is enforced in equity as a lien attaching to the property, on the maxim that *equity considers as done that which ought to be done."* 91 Ky. 596, 111 Ky. 84, 138 Ky. 133; 86 U. S. 19 Wall 544. *Briggs* v. *United States*, 143 U. S. 346.

See discussions by Justice Field U. S. Supreme Court,

U. S. Vol. 143, page 346. The lien attaches as soon as the crop comes into existence (when planted). That was before Miss Roberts' mortgage was taken. *Butt* v. *Ellett*, 86 U. S. (19 Wall) 544, page 183.

The defendant, Lyman E. Penn, gave this chattel mortgage to the Second National Bank of Circleville on the 14th day of May, 1932, and the same day said chattel mortgage was filed for record in the recorder's office of Pickaway county, Ohio; that this 35 acres of corn was planted beginning on the 19th day of May and ended on the 26th day of May, 1932; on the 28th day of May, 1932, the mortgagor, Lyman E. Penn, gave to Miss Nell Roberts a chattel mortgage on the same corn.

It can not be said that Miss Roberts did not have notice of the previous mortgage given to the Second National Bank as the bank did all the law required to give notice to third persons or after assignees or mortgagees. The filing of the first mortgage with the recorder was all the law required.

Under the authorities herein cited, the court holds that the Second National Bank has *in equity* the first and best lien on this 35 acres of Corn and that Miss Nell Roberts has a legal lien on such surplus as may remain after the Second National Bank shall have been paid in full its lien on said corn.