### CHARLES LELAND *v.* LABAN SPRAGUE.

#### *Landlord and Tenant.*

An agreement, by the tenant or occupant of a piece of land, that the owner of the land, or one who has a right to it superior to his, shall own and be entitled to the crops to be raised thereon, is valid, and will enable the landlord to maintain an action of trover for them against an attaching creditor of the tenant, or one who purchases them of him with notice of the landlord's right.

TROVER for two thousand bushels of potatoes. Plea, the general issue; trial by jury, December Term, 1855,—POLAND, J., presiding.

The plaintiff introduced evidence tending to prove that in 1849,

one Arad Hitchcock was the owner of a lot of land in Westfield, and contracted to sell the same to one Lewis Sawyer for two hundred dollars; Sawyer paid Hitchcock fifty dollars, and executed his notes for one hundred and fifty dollars, and Hitchcock gave Sawyer a bond to convey the lot to him upon payment of said notes. Sawyer went into possession of the lot, and cleared or partially cleared about ten acres of land upon it. In April, 1853, one William Allen made a trade with Sawyer to purchase his interest in said land and contract, and pay him $180.00, and clear him from the notes to Hitchcock. Allen being irresponsible, Sawyer desired him to procure some person to become responsible for the payment of said sum, and, accordingly, Allen and Sawyer called on the plaintiff to procure him to become responsible, at which time the trade was talked over, and the plaintiff agreed to enter into the arrangement hereinafter mentioned; and notes were executed to Sawyer for the amount to be paid to him, and a writing to pay the notes still due to Hitchcock, and these were signed by Allen, as principal, and the plaintiff, as surety. At the same time an assignment was made, by Sawyer, of his bond from Hitchcock, to the plaintiff, and at the same time the plaintiff gave Allen a writing that when Allen should pay all said notes given for the land, and all legal claims that the plaintiff might have against him, he would convey the land to him. It was also agreed, at the same time, that Allen was to go on and plant said ten acres with potatoes, and that the plaintiff should furnish the seed, and make such advances in money as would enable Allen to raise said crop of potatoes, and that, in the fall, Allen should draw them to the plaintiff's starch factory, and that the plaintiff should pay, or account for them the current price, and, after satisfying all advances made by the plaintiff in money and potatoes, the balance, if any, should be applied on the notes for the land, and that said potatoes should be the property of the plaintiff. The agreement was by parol wholly, except the assignment of the bond and the writing given by the plaintiff to Allen, as above stated.

On the same day of the trade, the plaintiff paid Sawyer one of the notes given to him for the sum of $50.00. The plaintiff also furnished Allen with most of the seed to plant said ten acres with potatoes, and also advanced money, from time to time, to enable

him to cultivate them, to about the sum of two hundred dollars. Allen went on and planted said ten acres with potatoes, and cultivated the same; and also planted a small piece of corn, and a few oats, on the same lot. It did not appear that the plaintiff exercised any control over the management of said place by Allen, or that he directed at all, as to the manner of carrying the same on, but that Allen carried on the same as he pleased, as ostensible owner.

On the 24th day of September, 1853, Allen sold his interest in said land, and gave a bill of sale of the potatoes growing on said land to the defendant and one Dana, and also an assignment of said writing from the plaintiff to him,—all for the sum of fifty dollars, which was paid by the defendant; and the defendant, on the next day, went on to said premises and dug and carried away all said potatoes.

The plaintiff's evidence tended to prove that when the defendant and Dana made the contract with Allen, they were informed by Allen of all the contracts, arrangements and dealings between him and the plaintiff, above detailed.

The defendant's counsel requested the court to charge that, conceding all the facts to be found which the plaintiff's evidence tended to prove, the plaintiff could not recover. But the court charged that, if they found the contract between the plaintiff and Allen to be as the plaintiff's evidence tended to prove, and, that it was understood and agreed between the plaintiff and Allen that said potatoes were to be the property of the plaintiff from the beginning, and that the plaintiff made the advances to Allen as he claimed, and that when the defendant and Dana made their contract with Allen they had notice of all these facts, then the plaintiff would be entitled to recover. To this charge and refusal to charge, the defendant excepted. The jury returned a verdict for the plaintiff.

*T. P. Redfield* for the defendant.

The case negates that Allen was the servant of the plaintiff. Nor can it be questioned that Allen had possession and dominion of the premises in his own right.

Does an *executory contract* to raise and deliver to the plaintiff potatoes, *in futuro*, at his starch factory, vest in him the title be-

fore delivery? Was Allen a *tort feasor* in using a portion of the potatoes in his own household? Had the crop failed, or had the potatoes been destroyed after they were dug, whose loss was it? Had a creditor attached them, could the plaintiff question his right? *Hurd* v. *Darling*, 16 Vt. 381; *Loomis* v. *Lincoln*, 24 do. 153.

This contract was executory, and vested no property in the potatoes until the delivery; *Brainard et al.* v. *Burton et al.*, 5 Vt. 97.

*Peck & Colby* for the plaintiff.

The case shows title in the plaintiff, and conversion by defendant, and, in principle, cannot be distinguished from *Smith* v. *Atkins*, 18 Vt. 465.

The opinion of the court was delivered by

REDFIELD, CH. J. The facts in this case show that as between Allen and the plaintiff the superior title to the land was in the plaintiff, and, as to this contract, Allen agreed, virtually, to raise the potatoes for the plaintiff, and that, from the first to the last, the title should be in the plaintiff. This contract was *bona fide*, and upon sufficient consideration; and the contract, under which the defendant claims title, was made with a full knowledge of the plaintiff's contract with Allen. It is then resolved into a mere question whether, under the state of facts, we can regard the title in the potatoes as in the plaintiff. The case is no doubt pretty near the line, and might without much violence be decided either way. According to the decisions of many of the American states, it would not be regarded as vesting any title in the plaintiff, which would be exempt from attachment by the creditors of Allen. But by our decisions, if the land is to be regarded as the plaintiff's, a contract for the growing crop to be his property is valid, even as against attaching creditors of the tenant. *Smith* v. *Atkins*, 18 Vt. We think the principle of this case must control the present.

Judgment affirmed.