Decided at PENDLETON, July 20, 1895.

## LAWRENCE *v.* PHY.
[41 Pac. 671.]

1. FARM LEASE—CROP MORTGAGE.— Under a lease retaining in the lessor the ownership of the entire crop until payment has been made of all expenses in caring for it, and of all laborers' charges and liens, and until the one third reserved as rent has been sacked and delivered, the lessee has an interest in the crop that he may sell or mortgage before condition broken.

2. FARM LEASE— EQUITABLE LIEN OF EMPLOYEES.— A provision in a lease reserving to the lessor the ownership of a crop until payment of all laborers' claims and liens, and all other expenses of caring for the same, does not create a lien on the crop in favor of a harvest hand or other employé, who was not a party to the lease, for work done by him in harvesting or otherwise caring for such crop.

APPEAL from Union: MORTON D. CLIFFORD, Judge.

Action by John Lawrence and others against J. F. Phy and J. W. Couper for the wrongful taking and conversion by defendants of certain grain, and for damages in the sum of two thousand dollars. The complaint alleges, in substance, a copartnership between Ed and John Tinkham, under the firm name of Tinkham Brothers;

that they leased from E. J. Couper, receiver, for the cropping season of eighteen hundred and ninety-four, certain premises, known as the Jones Ranch and Stanton Ranch, agreeing to pay as rental one third of the grain grown thereon, · to be delivered at the machine when threshed; that by the terms of the lease their two thirds interest in the crop was expressly charged with the payment of persons employed by them in and about the seeding, caring for, harvesting, and threshing the entire crop; that, becoming largely indebted to plaintiffs on account of work and labor done and performed in and about putting in the crops, harvesting and caring for the same, in order to secure the payment of such indebtedness, and the further liabilities to accrue for work and labor thereafter to be performed in threshing and caring for said crop, then cut and stacked upon the premises, the said Tinkham Brothers, on the eighteenth day of October, eighteen hundred and ninety-four, turned over to and put plaintiffs in possession of all said crop, and then and there authorized plaintiffs to thresh the same, and deliver to E. J. Couper, receiver, his one third thereof at the machine, and to sell the remaining two thirds, and out of the proceeds to pay themselves whatsoever was due them on account of such work and labor; that the said two thirds interest amounted to about five thousand bushels of wheat and three thousand bushels of barley, of the value of two thousand dollars; that on the ninth of November, eighteen hundred and ninety-four, defendants wrongfully took said grain from plaintiffs, and converted the same to their own use, and that at said date Tinkham Brothers were indebted to plaintiffs in the aggregate sum of two thousand and thirteen dollars and fifty-seven cents.  The answer puts in issue every material allegation of the complaint, except the fact of the Tinkham Brothers copartnership and leasing, but the

denials as to the quantity of grain are qualified. For a further and separate defense, defendants allege, in substance, that in March and April of eighteen hundred and ninety-four, and thereafter, Tinkham Brothers, desiring money with which to buy seed grain, and to enable them to put in said crop, the defendant J. W. Couper, with the express agreement that he should have the crop as security therefor, advanced and loaned to Tinkham Brothers, at divers times and in sundry amounts, the sum of two thousand dollars, and on May twenty-sixth, eighteen hundred and ninety-four, took their note for that amount payable October first, eighteen hundred and ninety-four; and that to secure the payment thereof they executed and delivered to him at the same time a chattel mortgage upon their undivided two thirds interest in the growing crop upon that part of the premises known as the Stanton Ranch, consisting of seven hundred acres, which mortgage was duly filed with the county clerk on the same day; that on November ninth, eighteen hundred and ninety-four, the conditions of the mortgage having been broken, J. W. Couper and the defendant Phy, who was sheriff of Union County, Oregon, and acting under his (Couper's) directions, took said grain into their possession under and by virtue of the authority conferred by such mortgage, and proceeded to complete the harvesting and threshing thereof. The reply puts in issue the material allegations of the answer, and sets forth affirmatively other matter not relevant here. The lease referred to contains, among others, the following provisions: "It is further provided by this lease that the said Tinkham Brothers shall not sublet any of said ground without the written consent of the said E. J. Couper, or his successor in interest. And it is also provided that the crop so raised shall be and remain the crop of the said E. J. Couper, receiver, or his successor in interest,

until the payment of all expenses necessary to care for said crop, and put the said one third rental in sacks, as herein provided for, and to cover any liens of hands, or otherwise, incurred in caring for, harvesting, or threshing thereof, together with the payment of the said one third rental as herein provided." A trial was had, and the verdict and judgment being for plaintiff, defendants appeal.                                    REVERSED.

For appellants there was a brief by *Messrs. Hailey and Lowell,* and an oral argument by *Mr. Thomas G. Hailey.*

For respondents there was a brief and an oral argument by *Mr. Thomas A. Crawford.*

Opinion by MR. JUSTICE WOLVERTON.

There are numerous assignments of error, but from the view we take of the case it is only necessary for us to consider two questions, which arise upon the court's instructions to the jury.    Plaintiff's contentions are: *First,* that the provision in the lease "that the crop so raised shall be and remain the crop of the said E. J. Couper, receiver, or his successor in interest, until the payment of all expenses necessary to care for said crop, and put the said one third rental in sacks, as herein provided for, and to cover any liens of hands or otherwise incurred in caring for, harvesting, or threshing thereof, together with the payment of said one third rental" constituted E. J. Couper the sole owner of the crop, and until it was raised and harvested, and the expenses paid by the Tinkham Brothers, they had no interest therein subject to mortgage or sale; and, *second,* that such provisions of the lease created an equitable lien upon Tinkham Brothers' interest in the crop in favor of the laborers to the extent of their wages remaining due and unpaid and which had

accrued on account of the production and harvesting thereof. Both these propositions are controverted by defendants. The law is settled in this state that the lessor may retain within himself the ownership of the crop to be grown upon premises leased by him until the rent is paid: *Fox* v. *McKinney,* 9 Or. 493. But what the nature and extent of the lessees interest is, and to what extent he may deal with it, are the questions here.

1. The lease expressly prohibits Tinkham Brothers from subletting any portion of the premises, but it contains no provision against the assignment of the lease, or disposition of their interest in the crop. It has been said (Jones on Chattel Mortgages, § 114,) that "if there be an agreement that the crops shall belong to the owner of the land, and that the tenant, after paying him for certain advances, should have a certain undivided portion of the crop, the tenant has no interest which he can sell or mortgage," citing *Ponder* v. *Rhea,* 32 Ark. 435, and *Leland* v. *Sprague,* 28 Vt. 746. The former of these cases went upon the ground that the party claiming as tenant was only a cropper, had no interest in the land, and was to receive his share of the crop as the price of his labor; and the latter simply holds that the landlord may maintain trover against an attaching creditor of the tenant, or one who purchases from him with notice of the landlord's right. The same thing may be said of other cases cited in respondents brief. In *Lewis* v. *Lyman,* 22 Pick. 437, it is held that the tenant's remuneration was in the nature of wages, and ownership of the crop remained with the lessor, and this was independent of any stipulation that the ownership should remain in the landlord. So in *Wentworth* v. *Miller,* 53 Cal. 10, it was held that purchasers holding from lessees under such an agreement for leasing could assert no right of possession as against the lessors. So, also, in *Howell* v. *Foster,* 65 Cal. 169. It

appeared that the lease there provided that all grain should be and remain the property of the lessor until certain advances made by him were fully paid, and then that he should deliver to the lessee his three fourths interest of the grain raised, and it was further stipulated that prior to the payment of the advances the lessee "shall have no right to dispose of any portion thereof." It was held that under this agreement the crop was in no way subject to the disposal of the lessee. These cases do not support the text of Jones on Chattel Mortgages, nor the contention of respondents; but *Andrew* v. *Newcomb,* 32 N. Y. 419, and *Smith* v. *Atkins,* 18 Vt. 461, do, apparently. The former of these two cases was an action in the nature of replevin by a purchaser of the crop from the lessor against one who had bought under an attachment and sale on execution against the lessee, and it was held that the action would lie, the court saying, among other things, that the crop "could not be taken under a process of *fieri facias* which only authorizes the levying the debt on the goods and chattel of the debtor." The latter case was an action in trespass for taking a quantity of hay under a purchase of the lessor's interest in the lease against a party who had purchased the lessee's interest in the property at a sheriff's sale. It was considered that the action would lie, but the court said, in the course of the opinion, that the lessee "at the time of the levy and sale had no attachable property in the hay." But the remarks here quoted were not necessary in either case to the decision. Upon the other hand, in *Dworak* v. *Graves,* 16 Neb. 706, (21 N. W. 440,) COBB, C. J., speaking for the court, said: "I have come to the conclusion that the law is quite clear that, while the landlord has the right to bind the tenant or cropper not to sell or sublet his lease, or the crops while growing or standing on the premises, without the consent of the lessor, yet, without such term

or stipulation in the lease or contract, the tenant would have the right to sublet the land or sell his interest in the crop at any time."

*Yates* v. *Kinney,* 19 Neb. 275, (27 N. W, 132,) is much in point. This was a suit in equity to restrain Kinney, a tenant of plaintiff, and Carey, a mortgagee of the crop, from committing waste, and appropriating to their own use the crops grown on the land of Kinney. The lease under which Kinney went into possession contained a provision as follows: "The crop is considered the property of the first party until it is divided." The court, after stating the holding in *Dworak* v. *Graves,* 16 Neb. 706, (21 N. W. 440,) said: "It would logically follow that the same rights or interests might be mortgaged. But it is insisted that as, by the terms of the lease, the crop is considered the property of the plaintiff until it is divided, a different rule would have to be applied, and that no such transfer or mortgage could be made which would not violate the property rights of plaintiff. It is evident that Kinney had some interest in the crops. The fact that the extent of that interest depended upon his compliance with the terms of his lease could not deprive him of the right to sell or mortgage it." In *Farnum* v. *Hefner,* 79 Cal. 575, (12 Am. St. Rep. 174, 21 Pac. 955,) the leasehold interest of the lessee, with like condition, was levied upon and sold; and it was held that it carried his interest to the purchaser, who could go forward with the performance of the conditions of the lease, and thereby become entitled to the lessee's interest in the crop. PO-LAND, C. J., in *Bellows* v. *Wells,* 36 Vt. 599, says: "The reasoning upon which our decisions go is that the owner of the land, being also the owner of the fruits or products of it, in parting with the use of it to another, may make such conditions and reservations in relation to the land itself, or the products grown from it, as he chooses,

instead of parting with the full right. The principle is the same as that upon which conditional sales of personal property are upheld." The buyer under a conditional sale of personal property immediately acquires an interest therein. Defeasable though it may be, it is such an interest that, until breach of the condition, he may sell, convey, or mortgage: Benjamin on Sales (6th ed.), 283; *Vincent* v. *Cornell,* 13 Pick. 294 (23 Am. Dec. 683); *Chase* v. *Ingalls,* 122 Mass. 381; *Currier* v. *Knapp,* 117 Mass. 324; *Day* v. *Bassett,* 102 Mass. 445.

It would seem that under these authorities Tinkham Brothers had an interest in the crop that they could sell or mortgage prior to condition broken, especially as there are no conditions in the lease in contravention of an assignment thereof, or of the sale of their interest in the crop, and we think this is the better doctrine as applied to cases of like nature. After condition broken, Tinkham Brothers and, *a fortiori,* the persons holding under them, had no right to possession as against E. J. Couper. Most of, if not all, the authorities cited by respondents in support of their contention are actions either by the lessor or his successor in interest. But this is an action by third parties also claiming under Tinkham Brothers, and unless they have a right superior in law to that of the mortgagee they cannot prevail.

2. We come now to the second proposition. Testimony was produced at the trial tending to show that on the eighteenth day of October, eighteen hundred and ninety-four, Tinkham Brothers turned over to plaintiffs the possession of the crop, which was then cut and in the stack, with authority to thresh and deliver to E. J. Couper his one third interest, and to sell the balance, and out of the proceeds retain the wages due for labor in producing and harvesting the crop; they to account to Tink ham Brothers for any balance that might remain. Now

27 OR.—66.

it is claimed that under the terms of the lease Tinkham Brothers' two thirds interest in the crop was expressly charged with the payment of the laborers' wages. The lease provides that the crop shall remain the property of E. J. Couper until the payment of all expenses necessary to care for the crop and to put the one third rental into sacks, and to cover any liens of hands, or otherwise, incurred, together with the payment of the one third rental. The evident central object of this provision was to secure the payment of the one third rental to Couper, and, as a means to that end, Tinkham Brothers were required to pay all expenses and liens of hands before they should become entitled absolutely to their two thirds interest. The laborers were not parties to the lease or agreement, nor was the crop constituted a fund in the hands of Couper for their payment. Couper is not charged with the duty or obligation of paying them out of the crop, or of holding it for their security. If he had received his rent and relinquished to Tinkham Brothers their proportion prior to the plaintiffs obtaining possession, undoubtedly they could not have had any recourse against him to obtain the amount due for wages from Tinkham Brothers, nor could they have followed the grain into the hands of third parties who had purchased even with full knowledge of the terms of the lease. Under these conditions, we think that no lien, either equitable or otherwise, was created by the terms of the lease in favor of Tinkham Brothers employés. See *Dillon* v. *Barnard,* 88 U. S. (21 Wall.), 430. The test as to whether the employés of Tinkham Brothers had acquired an equitable lien upon the crop or upon Tinkham Brothers interest therein is, could they have proceeded against such crop or interest prior to their having obtained possession, in an equitable proceeding, and subjected it to the payment of their wages?": Pomeroy on Equity Ju-

risprudence, § 1233.   It is apparent that they could not.
Whatever lien, therefore, plaintiffs acquired upon the
crop or grain was by virtue of the possession they ob-
tained from Tinkham Brothers under their alleged agree-
ment with them to thresh it and pay themselves from the
proceeds thereof.   But such lien was acquired long sub-
sequent to the execution of Couper's mortgage, and is
inferior thereto.   As between the mortgagee and the
plaintiffs, if the conditions of the mortgage have been
broken, he has the right to possession.   The instructions
of the court proceeded upon the theory contended for by
counsel for respondents, and hence were erroneous in
these particulars.   We think the assignments of error
contained in the notice of appeal sufficiently specific un-
der *Nickum* v. *Gaston,* 24 Or. 388 (33 Pac. 671, 35 Pac. 31).
The judgment of the court below will be reversed, and
the cause remanded for such action as may seem proper,
not inconsistent with this opinion.

REVERSED.

Decided at PENDLETON, July 20, 1895.