Argued October 26, affirmed December 1, 1914, rehearing denied January 5, 1915.

# POWDER VALLEY STATE BANK *v.* HUDELSON.

### (144 Pac. 494.)

**Trial—Direction of Verdict—Evidence.**

1. A motion to instruct a verdict for plaintiff was properly denied, where there was some evidence authorizing a verdict for defendant.

**Appeal and Error—"Evidence to Support the Verdict."**

2. As used in Article VII, Section 3, of the Constitution, providing that a finding of the jury will not be set aside where there is "evidence to support the verdict," the words quoted mean some legal evidence tending to prove every material fact in issue as to which the party in whose favor the verdict was rendered has the burden of proof.

**Evidence—Counterclaim—Burden of Proof.**

3. Where, in a bank's action on a note, defendants, in addition to pleading payment, pleaded a counterclaim, in a sum equal to the amount of the note, for money had and received by plaintiff for the use of defendants, the burden was on defendants to prove their counterclaim.

**Money Received—"Action for Money had and Received"—Right to Maintain.**

4. An "action for money had and received" is an equitable action which may ordinarily be maintained whenever one person has money in his hands belonging to another, which in equity and good conscience he should pay to such other person.

**Money Received—Special Deposit—Disposition.**

5. Where a bank receives money for the M. Company under an agreement, express or implied, between the bank and the M. Company and H., that the bank shall deliver the money to H. in payment of a sum owed it by the M. Company, such money is a special deposit which H. may recover from the bank or set it off against its indebted-

ness to the bank, though the bank has applied it on a debt owing to it by the M. Company.

[As to special as distinguished from general deposits, see notes in Ann. Cas. 1913E, 45; Ann. Cas. 1914B, 677.]

### Appeal and Error—Assignments of Error—Sufficiency—"Set Out Briefly and Concisely."

6. An assignment of error complaining that "the Circuit Court erred in allowing the witnesses * * to answer several questions respectively embodied in exceptions 1 to 52, inclusive," is insufficient to comply with Supreme Court Rule 11, providing that appellant shall "set out briefly and concisely" the errors relied on; the words quoted meaning, as used in this rule, that appellant shall state or describe briefly the rulings of the trial court which he desires to have reviewed.

### Money Received—Evidence—Admissibility.

7. Where, in a bank's action on a note, defendants pleaded a counterclaim for money had and received by plaintiff to apply on a debt due defendants from the M. Company, a check given to defendants by the M. Company and drawn on plaintiff was admissible in evidence, in connection with a conversation between plaintiff's officers and one of the defendants at the time of its presentation, as tending to prove defendants' counterclaim, although the counterclaim was not based thereon.

### Money Received—Evidence—Admissibility.

8. Where, in a bank's action on a note, defendants pleaded a counterclaim for a special deposit received by plaintiff to pay a debt due defendants from the M. Company, a statement made by plaintiff of its account with the M. Company and showing the receipt of such deposit was properly admitted in evidence.

### Money Received—Evidence—Admissibility.

9. Where, in a bank's action on a note, defendants pleaded a counterclaim for a special deposit made by R. for the M. Company, and received by plaintiff under an agreement to pay the same, to defendants on a debt due them on an unpaid check from the M. Company, the testimony of R. that the deposit was made to take care of the M. Company's accounts relating to the pay-roll and supplies and checks, including the check given to the defendants by the M. Company and evidencing their debt, was properly admitted.

### Money Received—Assignment of Claims—Question for Jury.

10. Under conflicting evidence in a bank's action on a note, wherein defendants pleaded a counterclaim for a special deposit received by plaintiff for the M. Company under an agreement to apply same to defendants on a debt due from that company, the question whether prior to the making of such deposit the M. Company had assigned to plaintiff all its outstanding accounts, including the draft with which the deposit was made, was for the jury.

### Trial—Instructions—Construction.

11. Instructions should be construed as a whole to determine their sufficiency.

Trial—Refusal of Instructions Covered.

12.  Where the instructions fairly covered the issues and construed as a whole, were free from error, it was not error to refuse other instructions correctly stating the law.

From Union: JOHN W. KNOWLES, Judge.

This is an action on a note by the Powder Valley State Bank against A. B. Hudelson and W. A. Hudelson, partners, doing business under the firm name and style of A. B. Hudelson & Son.  There was a judgment in favor of defendants and plaintiff appeals.

                                                    AFFIRMED.

For appellant there was a brief over the name of *Messrs. Cochran & Eberhard,* with oral arguments by *Mr. George T. Cochran* and *Mr. Colon R. Eberhard.*

For respondents there was a brief with oral arguments by *Mr. John S. Hodgin* and *Mr. James D. Slater.*

In Banc.  MR. JUSTICE RAMSEY delivered the opinion of the court.

The plaintiff is a banking corporation doing business at North Powder, in Union County.  The defendants are a copartnership, doing a mercantile business at North Powder.  The Metzler-Hegsted Lumber Company was doing business in the manufacture and sale of lumber at or near North Powder, and the Radford Lumber Company, also, did business there.  The Metzler-Hegsted Lumber Company manufactured lumber and sold it to the Radford Lumber Company, and the latter shipped it east, and paid the former company for the lumber by drafts on eastern banks.  On the 2d day of February, 1912, the defendants executed to the plaintiff their promissory note for $1,000 payable in six months from its date, and bearing interest at the

rate of 8 per cent per annum. This action is based upon said note. The interest on said note to January 2, 1913, is credited by the complaint. The complaint demands judgment for $1,000 and interest thereon from January 2, 1913, and $150 as attorneys' fees, etc.

The answer pleads payment of said promissory note and, also, a counterclaim in the sum of $1,000 for money had and received by the plaintiffs for the use and benefit of the defendants, on the 16th day of December, 1912, and interest on the said sum.

The reply denies the new matter of the answer and sets up new matter. The issues were tried by a jury, and a verdict and a judgment were rendered in favor of the defendants. The plaintiff appeals.

1–3. The plaintiff assigns as error the refusal of the trial court to instruct the jury to return a verdict for the plaintiff. The jury returned a verdict for the defendants. This imports that they found that the defendants' counterclaim had been made out, and that they set it off against the amount due the plaintiff on the promissory note pleaded in the complaint, and returned a verdict "for the defendants." The claim and the counterclaim were found to be equal. The finding of the jury cannot be set aside unless we can say affirmatively that there is no evidence to support the verdict: Article VII, Section 3, of the State Constitution. By "evidence to support the verdict" is meant some legal evidence tending to prove every material fact in issue as to which the party in whose favor the verdict was rendered had the burden of proof. The defendants in this case had the burden of proof to make out their counterclaim. If there was any legal evidence to support the verdict, the trial court properly denied the motion for an instructed verdict. In determining this point we have nothing to do with the

weight of the evidence.   If there was any legal evidence to support the verdict, or to make out the defendants' counterclaim, the question was for the jury, and not for the court.   The defendants furnished supplies to the men working for the Metzler-Hegsted Lumber Company, and said company was to pay the plaintiff therefor and charge the accounts of their employees with their respective portions thereof.   On November 25, 1912, the Metzler-Hegsted Lumber Company was indebted to the defendants on account in the sum of $1,900, and on that day said company drew upon the plaintiff its check requiring the plaintiff to pay to the order of the defendants the sum of $1,000.   At that time the said company did not have in the plaintiff bank enough funds to pay said check.   On said 25th day of November, 1912, the defendants presented said check to the plaintiff at its bank and demanded payment thereof; but the bank did not pay the check, and gave as a reason for not paying it that the company did not at that time have sufficient funds in the bank to pay the check, and the assistant cashier stated to the defendants, also, that the defendants would have to wait until the next draft came: See Ev., p. 18.

The next day one of the defendants and E. J. Metzler, manager of the Metzgler-Hegsted Lumber Company, called at the plaintiff bank, and Mr. Metzler said to the cashier of the bank (Lambert):

"I have given Will [meaning one of the defendants] a check for a thousand dollars [meaning the check referred to *supra*], and when my next draft comes in, you credit his account with that amount."

That was the day after said check was given.   That afternoon one of the defendants left said check with

Mr. Gilkison, assistant cashier, at the plaintiff bank, for collection, and it was kept there by the bank about two weeks (Ev., p. 23). W. A. Hudelson testifies that, when he left said check with the bank, he told Gilkison that, if the deposit should come in, to credit it immediately. He says that the bank did not refuse to pay said check (Ev., p. 23). He says, also, that the assistant cashier (Gilkison) had charge of the bank and said he would hold said check subject to the deposit and that he held it about two weeks. This witness testifies, also that he informed the cashier (Lambert) that the deposit that the Metzler-Hegsted Lumber Company was expecting to be made was to come from the Radford Lumber Company, and that he told the bank to hold the check for $1,000 that had been given him as stated *supra,* until Brown, the manager of the Radford Lumber Company, made his deposit. C. H. Brown, as manager of the Radford Lumber Company, deposited with the plaintiff for the Metzler-Hegsted Lumber Company, on November 25, 1912, $1,500, and on November 27, 1912, $376.09, and on December 16, 1912, a draft for $1,000, and January 22, 1913, $430.35.

The defendant W. A. Hudelson says that, when he presented said check for $1,000 to the bank the second time for payment, on December 16, 1912, the bank had funds of the Metzler-Hegsted Lumber Company with which to pay it, as Mr. Brown had just deposited said draft for $1,000; but the assistant cashier, Gilkison, told him that he could not pay it, for Mr. Lambert had instructed him to apply the $1,000 on the note that the bank held against the Metzler-Hegsted Lumber Company.

E. J. Metzler, manager of the Metzler-Hegsted Lumber Company, testified that he sold the company's lumber to an eastern company (the Radford Lumber Com-

pany), and they usually paid for lumber on or about the 15th of each month, and that sometimes they were a little late in making payments; that he had to go away on business; so he went to the plaintiff bank and told the bank people that he wanted to issue checks and leave them with different parties for them to pay, on the receipt of money coming from the eastern company, and they said that would be all right.   He says that he went ahead and issued the checks, covering all they would pay out for the month of December, "and left them—most of them—with the bank.   One in particular I gave to Mr. Hudelson himself."   He says that he and Mr. Hudelson walked over to the bank (after said $1,000 check was drawn), and that he told Mr. Lambert, the cashier, that he had given Mr. Hudelson a check for $1,000, "and naturally we expected it to be paid on the receipt of this money (from the east), not exactly in those words, but we talked along those lines."   He says that Mr. Lambert did not exactly commit himself as to whether he would take the check or not, and the witness adds:

"We simply talked the matter over.  My understanding was that this could be arranged all right.   He was very busy that morning when we were talking to him."

In another place, this witness testified:

"I simple told Mr. Hudelson about the circumstances about the money not being there, and we went over to the bank, and I told Mr. Lambert that I had given Mr. Hudelson this check for $1,000, and as soon as the money came in I would like for him to take care of this check."

He said, also, that it was to be paid out of funds coming from the Radford Lumber Company on the November estimates.   The checks referred to included

the one to the defendants, and the witness thinks they were drawn about November 22, 1912.

There were other facts and circumstances tending to show that the plaintiff received from the Metzler-Hegsted Lumber Company, for the defendants, the $1,000 on December 16, 1912; but it is not necessary to set them out in this opinion. It is shown that the Metzler-Hegsted Lumber Company, on November 25, 1912, when it drew the check on the plaintiff, payable to the defendants, for $1,000, was indebted to the defendants in the sum of $1,900, and that most of this was for supplies that the defendants had furnished the employees of said company at the latter's request, while they were manufacturing lumber. The check was drawn for only $1,000. The defendant presented the check to the plaintiff for payment, and the assistant cashier, then in charge of the bank, refused to pay the check at that time for the reason that the drawer did not have sufficient funds in the bank to pay it, and he informed the defendants that they would have to wait until the next draft came in. One of the defendants and Mr. Metzler called at the bank the next day, and the latter informed the cashier (Mr. Lambert) that he had given Mr. Hudelson a check for $1,000, and that, as soon as the money came in, he would like to have him take care of it. Mr. Lambert made no response, and Mr. Metzler adds that it was his understanding that that could be arranged all right, meaning, apparently, that it was his understanding, from what had been said, that the bank would pay said check, when the next draft should come from the east.

We find that there was some evidence tending to prove that the money that was paid into the bank by the Radford Lumber Company, after the drawing of said check for $1,000, was so paid in with the under-

standing and agreement on the part of the persons who paid it, the defendants, the plaintiff, and the Metzler-Hegsted Lumber Company, that $1,000 thereof was paid to the bank for the use and benefit of the defendants, and that the defendants were entitled to be allowed their counterclaim therefor.  As stated *supra,* we have no authority to determine in whose favor the evidence preponderated.  We are limited to determining whether there was any evidence to support the finding of the jury.  We find that there was some legal evidence to support the verdict, and that the motion for an instructed verdict was properly denied.

4, 5. An action for money had and received is an equitable action, and governed by equitable principles. In general, it may be maintained whenever one person has money in his hands belonging to another, which, in equity and good conscience, he ought to pay to such other person: 27 Cyc. 849.

In 2 Elliott, Contracts, Section 1374, the author says:

"The right to maintain an action for money had and received is general in its nature.  Where there is a legal right to demand a sum of money and there is no other remedy, the law will, for all purposes of a remedy, imply a promise of payment.  The action is comprehensive in its reach and scope, and is favored under the law.  The right to recover is equitable in its nature, although the action is in reality one at law."

2 Page, Contracts, Section 789, says, *inter alia:*

"If A receives money which belongs to B, under circumstances which give A no right thereto, but which bind A, on principles of justice and fairness, to repay such money to B, the common law allowed B to sue as on contract although there was no express contract, and no real implied contract. * * Since the contract alleged in the plaintiff's complaint is often purely fictitious, the plaintiff's right to recover in contract does

not depend upon any principles of privity of contract between the plaintiff and the defendant, and no privity is necessary. The plaintiff's right to recover is governed by principles of equity, although the action is one at law.''

In this case, if the plaintiff bank received the $1,000 that was deposited therein on December 16, 1912, by the Radford Lumber Company for the Metzler-Hegsted Lumber Company, with the agreement, express or implied, between the plaintiff and the Metzler-Hegsted Lumber Company and the defendants, that the plaintiff should pay or deliver said money to the defendants in payment of the sum of $1,000 that the last-named company owed the defendants, the defendants had a right to recover from the plaintiff said sum of $1,000, or to have it set off against the amount that they owed the plaintiff on the promissory note described in the complaint. Money received under the conditions just stated constitutes a special deposit, and must be applied by the bank receiving it in accordance with the agreement under which it was received.

6. The appellant's first assignment of error is as follows:

''That the Circuit Court erred in allowing the witnesses, and each of them, to answer the several questions respectively embodied in exceptions 1 to 52, inclusive.''

This is an attempt to assign error in 52 separate rulings of the trial court by the use of only 26 words. Rules 11 and 12 of this court (56 Or. 618–621, 117 Pac. x, xi) require the printed abstract to contain the appellant's assignment of errors relied upon, and these errors are required to be ''set out'' briefly and concisely.

In his Law Dictionary (2 ed.), page 1079, Mr. Black defines to "set out," when used in pleading, thus:

"To recite or narrate facts or circumstances; to allege or aver; to describe or to incorporate; as, to set out a deed or contract."

To "set out briefly and concisely," as used in rule 11, *supra,* means to state or describe briefly the rulings of the trial court which the appellant desires to have reviewed on the appeal. The assignment set out *supra* does not describe or state who the witnesses referred to were, or what questions were asked each or any of them, or even the subject concerning which any of them testified. It raises no question for review. Assignments 2, 3, 5, 6, 7 and 8, also, are too indefinite to raise any questions for trial here.

7. The plaintiff contends that the court erred in receiving in evidence the check marked Defendants' Exhibit 1. This is the check given on November 25, 1912, to the defendants, for $1,000 by the Metzler-Hegsted Lumber Company, drawn on the plaintiff. This check was admissible in connection with the other evidence given in behalf of the defendants to make out their counterclaim. The counterclaim was in no wise based upon this check; but the giving of the check, its presentation to the bank for payment, and the conversations between the officers of the plaintiff and one of the defendants concerning this check and the $1,000 for which it was drawn, were material facts tending to prove the defendants' counterclaim. The $1,000 deposited in the plaintiff bank on December 16, 1912, was received by the plaintiff, to pay the $1,000 for which this check was drawn, according to the contention of the defendants. There was some testimony given tending to prove this contention. We hold that said check was admissible in evidence.

8. The trial court properly admitted in evidence,· also, Defendants' Exhibit No. 7. It is a statement made by the plaintiff of its account with the Metzler-Hegsted Lumber Company, dated May 22, 1913. This statement covers deposits made by said company with the plaintiff and amounts paid out by the plaintiff on checks for said company, between November 22, 1912, and May 22, 1913. It shows that the bank received a deposit of $1,000 on December 16, 1912. This is the money that the defendants contend that the plaintiff received for them, and which is the basis of the defendants' counterclaim. It was competent to show that fact, and also the deposits made in the bank in November, 1912.

9. The testimony of Mr. Brown, manager of the Radford Lumber Company, to the effect that $1,000 was deposited with the plaintiff for the purpose of taking care of the accounts of the Metzler-Hegsted Lumber Company, relating to the pay-roll and supplies, the check of the defendants, and other checks, was properly admitted. Said $1,000 and other amounts were paid by Mr. Brown to the plaintiff on account of what his company owed the Metzler-Hegsted Lumber Company for lumber. The trial court permitted Mr. Brown to state for what purpose said money was paid or deposited with the plaintiff. The defendants claimed that $1,000 of the money so paid or deposited with the plaintiff was deposited for the use and benefit of the defendants, to pay said sum of $1,000 for which said check was drawn. The evidence was properly admitted.

10. The plaintiff contends, also, that the Metzler-Hegsted Lumber Company owed it several thousand dollars, on November 10, 1912, and that, on or about that date, said company assigned to it all that was then

owing to said company from the Radford Lumber
Company for lumber sold to the latter company by the
former company, to be applied on said indebtedness,
and that said assignment included the draft that Mr.
Brown, as manager of the Radford Lumber Company,
paid into the plaintiff bank on December 16, 1912, on
what the Radford Lumber Company owed the other
company, and that, by force of said assignment, said
$1,000 belonged to the plaintiff, and that therefore it
could not have been received as a special deposit for
the use and benefit of the defendants, etc.

Mr. Lambert, cashier of the plaintiff, says that this
statement was made on or about November 10, 1912,
and that it was in writing. He was unable to produce
it, and says that he gave it to Mr. Metzler, manager of
the Metzler-Hegsted Lumber Company. Mr. Metzler
seems not to know what became of it, but thinks that
he gave it to Mr. W. A. Hudelson, one of the defend-
ants, to whom he had made an assignment for the bene-
fit of his creditors. Why the bank, after receiving said
assignment, should have handed it back to Metzler, or
why Metzler should have delivered it to Mr. Hudelson,
does not appear from the evidence. Mr. Metzler is not
sure that he gave it to Mr. Hudelson, and the latter is
positive that he did not deliver it to him and that he
had no knowledge of the existence of said instrument.
Neither Mr. Brown, manager of the company that owed
the debts assigned by said instrument, nor the defend-
ants had any notice or knowledge of the existence of
said supposed assignment. Mr. Lambert says that it
was made on or about November 10, 1912, and hence, if
it was so made, it was executed 15 days before the
Metzler-Hegsted Lumber Company drew said check for
$1,000 on the plaintiff in favor of the defendants. On
November 25, 1912, fifteen days after said assignment

is supposed to have been made, the defendants presented said check to the plaintiff and demanded payment thereof. The assistant cashier, who had charge of the business at that time, told Mr. Hudelson that he could not pay the check then, for the drawer of the check did not have in the bank sufficient funds for that purpose, and that he would have to wait until the next draft came in. Now, if the bank had an assignment of what was owing from the Radford Lumber Company, why did the assistant cashier say that the defendants would have to wait until the next draft came, if the money to be represented by said draft had been assigned to the bank? Why did he not say that all that was coming to the Metzler-Hegsted Lumber Company had been assigned to the bank?

The next day Mr. Metzler and Mr. Hudelson called at the bank, and Mr. Lambert, the cashier, was in. Mr. Metzler informed Mr. Lambert that he had given Mr. Hudelson a check on the bank for $1,000, and that when his next draft should come in he wanted him to credit the defendants' account with the amount of said check. Now, it seems strange that Mr. Metzler would tell Mr. Lambert to credit the defendants' account with the amount of his next draft, if Metzler's Company had previously assigned to the bank the debt that would be paid by his next draft. According to the evidence of Metzler and Hudelson, Lambert made no objection to the statement that he should pay said check or credit the defendants with the amount thereof when the next Metzler draft should be received. If he had at that time an assignment covering the expected draft, why did he not state to Metzler and Hudelson that he would not pay said check out of the proceeds of the expected draft for the reason that the bank had an assignment

covering said expected draft? He did not mention any assignment, and he denies that these parties called upon him at that time concerning said check. He does not claim that he mentioned said assignment to the defendants until in January, 1913.

On pages 105 and 106 of the evidence, Metzler testifies that said supposed assignment was made at the request of Mr. Lambert for the purpose of protecting the bank against the Bank Commissioner, and that it was to be used "just for that purpose." The evidence and circumstances concerning said assignment are not very satisfactory. No one seems to have known of it but Lambert and Metzler, and they are unable to tell what became of it.

The questions concerning said supposed assignment were properly submitted to the jury by the instructions of the court, and it seems that the jury must have been of the opinion that the assignment was never executed, or that it was made after the bank received said money for the use and benefit of the defendants, or, if it was executed, that it did not cover the $1,000 received by the plaintiff for the defendants. The questions concerning said assignment were facts to be determined by the jury, under the instructions of the court.

11, 12. We have examined the instructions given by the trial court, and we find that they were fair and covered all the questions that were for the consideration of the jury. Instructions are to be construed as a whole. When the instructions given cover fairly all the questions at issue, and, as a whole, are free from error, it is not error for the court to refuse to give charges requested by the parties that state the law correctly. The attorneys for the appellant have shown industry

and ability in presenting their contentions, but we are unable to find in the record any reversible error.

The judgment of the court below is affirmed.

AFFIRMED. · REHEARING DENIED.

MR. JUSTICE MCNARY took no part in the consideration of this case.