Argued July 10, reversed and remanded September 8, 1925.

## CLAUDE COLE *v.* THE CANADIAN BANK OF COMMERCE.

(239 Pac. 98.)

**Courts—Objections to Place of Bringing Transitory Action cannot be Made After Answer on Merits.**

1. Objection that transitory action was instituted in wrong place cannot be made after answer on merits, defendant having thereby submitted to jurisdiction of court.

---

1. See 2 R. C. L. 338.

Dismissal and Nonsuit—Action not to be Dismissed Where Plaintiff Mistook Remedies Under Code.

2. Under Section 390, Or. L., an action cannot be dismissed because plaintiff mistook his remedy and brought suit on wrong side of court.

Appeal and Error—On Appeal from Judgment of Nonsuit, Evidence is Construed Most Favorably to Plaintiff.

3. On review of order of nonsuit, the evidence will be construed most favorably to plaintiff, since nonsuit concludes that if all of plaintiff's evidence is true, he is not entitled to recover.

Banks and Banking—Bank Receiving Funds Knowing of Joint Ownership, and Promising to Credit Plaintiff's Account With His Share, Held Liable for Misapplication.

4. Where bank received proceeds of wheat crop knowing they belonged one half to plaintiff and one half to purchaser of land, and promised to deposit plaintiff's share to his account, but instead paid to purchaser or his order more than his share, bank was liable to plaintiff for portion of share not received as for money had and received.

Banks and Banking—Refusal of Bank to Advance Money on Proceeds of Wheat Receipts Partly Belonging to Plaintiff not Notice That Bank Denied His Claim.

5. In action to recover proceeds of wheat receipts, where plaintiff notified bank that one half such proceeds were his, and bank promised to credit same to his account, bank's refusal of his request for money until other owner had been seen was not notice to plaintiff that bank would not credit him with his share which relieved it of liability to him.

See (1) 40 Cyc. 114.  (2) 18 C. J. 1180.  (3) 4 C. J. 764.  (4) 7 C. J. 641 (Anno.).  (5) 7 C. J. 641 (Anno.).

From Multnomah:  ROBERT TUCKER, Judge.

Department 1.

This is an appeal from a judgment of nonsuit in favor of the defendant bank. The plaintiff contracted to sell to one Newton a tract of land near Warner, Alberta. A payment was made at the time the contract was entered into. Newton assumed a mortgage and the balance of the purchase price was to be paid from the crops raised on the land. The contract was locally known as a crop contract. In this contract, Newton agreed to deliver to the plaintiff at Warner one half of the crops raised on said land until the entire purchase price had been paid. No crop was

produced in 1919. In 1920 a crop was harvested and delivered to an elevator at Warner. The receipts were issued to Newton for the wheat so delivered, and those receipts deposited in the branch of the defendant bank located at Warner. The contract between the plaintiff and Newton respecting the crop is in the following language:

" * * The second party agrees to properly plant all of the tillable land embraced in said tract, and not less than four hundred (400) acres each year, to grain crops and to properly cultivate, harvest and thrash said grain and deliver one-half (½) of all grain raised on said land to the first party at a warehouse to be designated by him located at Warner, Alberta, within a reasonable time after the same is thrashed, and to deliver to the first party such storage tickets, warehouse receipts and shipping bills as may be usually issued by said warehouse and immediately deliver the same to the first party free and clear of all costs, expenses or charges.

"It is understood and agreed that one-half (½) of all grain raised, harvested and thrashed on the above described land, until the purchase price herein provided for shall have been paid, shall belong to and be the property of the first party and shall at all times be vested in the first party after the same is planted and shall be delivered to him by the second party in the manner above described."

The contract then provides for the application on the contract of the proceeds of the grain so delivered by Newton to the plaintiff.

During the harvest season of 1920, and while the grain was being delivered to the warehouse at Warner, the plaintiff went to Warner from Portland, where he lived, for the purpose of collecting his part of the crop. The contract was admitted in evidence over the objection of the defendant for the purpose of proving plaintiff's ownership of the wheat. The

defendant bank was not a party to the contract. The plaintiff testified that while he was there part of the wheat had been hauled to the warehouse at Warner; that he went to see the defendant bank while he was there to notify the bank that he owned one half of the wheat crop; that Newton's sons were then hauling the wheat to the elevator and depositing the elevator receipts with the bank; that the bank had some of said receipts when he was there; and that he talked with the manager of the bank, a Mr. Orr, and in response to a question as to what the conversation was testified as follows:

"A. Well, I went into the bank and I asked one of the clerks to see the manager of the bank, so a man came up and shook hands with me and I told him who I was and I told him I would like to have a private talk with him. He says 'All right, come step into my office,' so we went into the private office and sat down by the table, and I says to Mr. Orr, 'Mr. Orr,' I says, 'I understand Mr. Newton is hauling the wheat and depositing the wheat receipts here at the bank, and I want to notify you that I was half owner of the crop.' 'Yes,' Mr. Orr says, 'we already know the circumstances,' he says, 'when Mr. Newton came up here in 1919 and also in 1920,' he said, 'he came here to the bank and applied for credit to carry on his farming operations,' and he says, 'we asked Mr. Newton for a copy of the sale contract between you and him, as to the sale and the purchase of the farm, and,' he says, 'that is how we know that you are a half owner of the crop, the wheat crop'; and he says, 'we couldn't accommodate Mr. Newton as to credit at that particular time because upon perusing the contract we found that you retained ownership of all the personal property, the horses and machinery and stuff like that on the farm,' and he says, 'that is the reason that we couldn't accommodate Mr. Newton for credit at that particular time, but,' he says, 'now Mr. Newton can have all the credit he wants,' he says. He says, 'We think lots of Mr. Newton, we

think he is an honest man,' he says, 'he can have all the money he wants.'

"Q. Did you ask him for any money? A. Yes, sir.

"Q. How much did you ask him for? A. I asked him for a thousand dollars on my half of the crop.

"Q. What did he say? A. Well, he says, 'we will have to see Mr. Newton about that,' he says.

"Q. Now what did you do then? Did you stay there or come back to Portland?

"A. Well, yes, I told the manager that I would expect the bank to withhold one-half of the money to my account which the wheat sold for; that the wheat receipts would be made out in Mr. Newton's name and that probably the delivery of the wheat would drag over a period of a month or six weeks, and that I couldn't afford to stay around there to look after my half of the crop of that wheat, and he says, 'all right,' he says, 'that is perfectly satisfactory.'"

There is other evidence tending to show that the bank had knowledge of the relation between the plaintiff and Newton. The plaintiff returned to Portland and later, in November, wrote to the defendant bank asking for a statement of his account, and in reply learned that all of the proceeds of the crop had been paid out to Mr. Newton, or to his order, excepting the sum of $935.44, which was paid by the defendant to the plaintiff by direction of Newton. A part of this sum was paid by a check issued by Newton to the plaintiff, and the balance by a draft sent to plaintiff by the defendant bank at the request of Newton. One thousand ninety-four dollars and twenty-five cents of the proceeds of the crop was applied by the defendant bank in payment of indebtedness owing it by the said Newton. One half of the crop, admittedly belonging to the plaintiff, amounted to $3,024.89.

The motion for nonsuit was granted by the learned circuit judge, partially on the theory that the plaintiff had mistaken his remedy and should have sued in equity instead of bringing an action at law. The circuit judge also further held that there was no evidence tending to show that the defendant bank had any knowledge that said Newton was misappropriating the proceeds of the crop when it honored the checks drawn on the account in favor of Newton, or when the warehouse receipts were converted into cash and deposited in the name of Newton. Some time before the institution of this action, Newton became bankrupt and had been discharged in bankruptcy.

Other evidence necessary to an understanding of the principles involved will be incorporated in the opinion.                    REVERSED AND REMANDED.

For appellant there was a brief over the name of *Mr. Glenn E. Husted,* with an oral argument by *Mr. Bartlett Cole.*

For respondent there was a brief over the name of *Messrs. Dolph, Mallory, Simon & Gearin* and *Mr. E. F. Freed,* with an oral argument by *Mr. Joseph Simon.*

COSHOW, J.—The plaintiff complains that the motion for nonsuit did not specify with sufficient particularity the grounds for the nonsuit. We do not deem it necessary to pass upon that matter. It is very technical, and we prefer to dispose of the appeal upon the merits of the case.

1. The defendant bank also complains because the action was instituted in Multnomah County instead

of Alberta, Canada. The defendant has no ground
for complaint on that account because it has an-
swered to the merits and thereby submitted to the
jurisdiction of the court. It is a transitory action
and no question of the jurisdiction of the subject
matter is involved.

2. The plaintiff invokes the rule that, even if he
mistook his remedy, the court should not have dis-
missed the action. This contention, on the part of
the plaintiff, must be sustained. Our statute ex-
pressly provides that a litigation shall not be dis-
missed because brought on the wrong side of the
court: Section 390, Or. L.; *McCann* v. *Oregon Scenic
Trips Co. et al.*, 105 Or. 213 (209 Pac. 483); *Simpson*
v. *First National Bank*, 94 Or. 147 (185 Pac. 913).
It was the duty of the Circuit Court to have retained
the case and decided it upon its merits, even if the
cause should have been tried in equity.

3. For the purpose of this appeal, the evidence ad-
duced by the plaintiff must be construed most favor-
ably to the plaintiff. The motion for nonsuit and
the order allowing the motion in effect concludes
that, even if all of the evidence adduced in behalf of
plaintiff is true, the plaintiff is not entitled to re-
cover: *Domurat* v. *O. W. R. & N. Co.*, 66 Or. 135, 143
(134 Pac. 313). The evidence in this case establishes
for the purpose of this appeal that the plaintiff was
the owner of one half of the receipts for the wheat
delivered by Newton to the Elevator Company at
Warner, and by it to the defendant bank; that the
plaintiff requested the defendant bank to deposit to
plaintiff's account one half of the proceeds of said
wheat receipts; that the defendant bank agreed to
do that, but instead paid all the proceeds except
$935.44 to Newton, or his order. The defendant

bank received as one half of the proceeds of said wheat receipts, the sum of $3,024.89, which it knew belonged to the plaintiff. The defendant deposited that sum, not to the plaintiff's account, but to the account of Newton.

"A bank must honor the checks and certificates of its depositor drawn in proper form without regard to the use the depositor is going to make of the fund; the only limitation is that the bank must not itself participate in the profits of the fraud.

"If a bank participates in the misapplication of trust money it is liable; as where money deposited by A. in his own name and known to the bank to belong to another was applied by A. to pay his debt to the bank, it was held liable to the principal." 1 Morse on Banks and Banking, 592, § 317, and note cited therein.

"Where a bank knowingly participates with a depositor in a misappropriation of trust funds and reaps the fruit of the breach of trust, it becomes liable to the beneficiary for whatever loss the latter sustains.

"Where money deposited in a bank was known by the bank to be held by the depositors in trust, the bank, in accepting such deposit, in payment of a debt due it by the depositors, became liable therefor; for it had at once not only abundant proof of the breach of trust, but participated in it for its own benefit." 2 Michie, Banks and Banking, 949, § 130.

"A bank having received a deposit, must repay the same to owner on demand." Magee on Banks and Banking (3 ed.), 295, § 178.

"The rule is that the bank may pay out money on deposit to the rightful owner, but when it has knowledge that a breach of trust is being perpetrated by the depositor, it is liable to the rightful owner of the deposit. * *

"The whole question fixing liability is one of knowledge. The bank must have knowledge that the deposit is a trust deposit and that when it is drawn out

by the trustee that he intends to misappropriate it. Unless these facts are clearly established the bank cannot be held.'' Magee on Banks and Banking (3 ed.), 304, § 179.

*Union Stock Yards Bank* v. *Gillespie,* 137 U. S. 411 (34 L. Ed. 724, 11 Sup. Ct. Rep. 118); *Allen* v. *Puritan Trust Co.,* 211 Mass. 409 (97 N. E. 916, L. R. A. 1915C, 518, and note); *Huff* v. *Oklahoma State Bank,* 87 Okl. 7 (207 Pac. 963); *Thompson* v. *State Bank,* 4 Cal. App. 660 (88 Pac. 987); *Cunningham* v. *Bank of Nampa, Ltd.,* 13 Idaho, 167 (88 Pac. 975, 121 Am. St. Rep. 257, 10 L. R. A. (N. S.) 706); *First Nat. Bank* v. *Kenney,* 116 Md. 24 (81 Atl. 227, Ann. Cas. 1913B, 1337); 7 C. J., pp. 644–646, § 333, p. 658, § 357, p. 675, § 393, p. 679, § 402; *National Bank* v. *Insurance Co.,* 104 U. S. 54, 70, 71 (26 L. Ed. 693); *Toronto Club* v. *Dominion Bank,* 26 Ont. Law Rep. 333; *First Nat. Bank* v. *Eastern Trust & Banking Co. et al.,* 108 Me. 79 (79 Atl. 4).

The money was not directly deposited in the defendant bank by Newton. It appears from the evidence that Newton was not at that time in Alberta, Canada. His sons were operating the farm. The warehouse receipts issued by the Elevator Company were payable to Newton, but deposited in the bank for collection. The bank had knowledge that one half of those wheat receipts belonged to the plaintiff and by the terms of the contract between plaintiff and Newton, a copy of which the manager of the bank said he had, should have been delivered to the plaintiff. At the request of the plaintiff, the bank promised to place to plaintiff's credit the proceeds of one half of those wheat receipts. One half of the wheat belonged to the plaintiff: *Fox et al.* v. *McKinney et al.,* 9 Or. 493, 499, 500; *Lawrence* v. *Phy,*

27 Or. 506, 510 (41 Pac. 671); *Broders* v. *Bohannon,*
30 Or. 599, 601 (48 Pac. 692); note to *Merchants
State Bank* v. *Sawyers Co-operative Assn.,* 14 A. L. R.
1362, and following; *In re Place,* 224 Fed. 778, 783;
17 C. J. 381, § 6; 36 C. J. 486, § 1442; *DeVaughn* v.
*Howell,* 82 Ga. 336 (9 S. E. 173, 14 Am. St. Rep. 162,
166).

4. The defendant bank received the money for the
wheat, one half of which was plaintiff's.   It follows,
therefore, that the bank is liable to the plaintiff for
money had and received.   There are respectable au-
thorities supporting the contention of plaintiff that
an action at law will lie to recover from the bank
under similar facts: *Drumm-Flato Co.* v. *Bank,* 92 Mo.
App. 326; *Southern Trust & Commerce Bank* v. *San
Diego Savings Bank,* 60 Cal. App. 215 (212 Pac. 385);
*Henchey* v. *Henchey,* 167 Mass. 77 (44 N. E. 1075);
*United States Fidelity Co.* v. *United States National
Bank,* 80 Or. 361, 364–367 (157 Pac. 155, L. R. A.
1916E, 610); *Powder Valley State Bank* v. *Hudelson,*
74 Or. 191, 199 (144 Pac. 494); *McStay Supply Co.* v.
*Stoddard et al.,* 35 Nev. 284 (132 Pac. 545); 2 Michie,
Banks and Banking, 943, note 88.

An action for money had and received is an equi-
table action: *Powder Valley State Bank* v. *Hudelson,*
above.

5. Defendant contends that, because the defendant
bank refused to give to plaintiff $1,000 upon his re-
quest, he had notice that the bank would not give him
credit for one half of the proceeds of the wheat re-
ceipts and is not liable.   This conclusion does not
follow necessarily.   The bank was justified in not
paying to plaintiff the amount he demanded until
he had notified Newton in whose name the wheat
receipts were.   The bank should have promptly noti-

fied Newton of plaintiff's claim to one half of the wheat receipts. If Newton then contested plaintiff's claim, the bank might have protected itself by compelling the two claimants to interplead: *Jaselli* v. *Riggs Nat. Bank,* 36 App. D. C. 156 (31 L. R. A. (N. S.) 763, and note); *First Nat. Bank* v. *Bache,* 71 Pa. St. 213. Again, it does not appear that the amount of receipts deposited at that time entitled plaintiff to receive as much as $1,000.

The evidence is more favorable to plaintiff than the allegations of his complaint. The complaint states facts sufficient to support a judgment in favor of the plaintiff.

The judgment of the Circuit Court is reversed and this case remanded with directions to proceed consistent with this opinion.

REVERSED AND REMANDED, WITH DIRECTIONS.

MCBRIDE, C. J., and BURNETT and RAND, JJ., concur.